**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**Petitions of BEVAN, SAUNDERS AND SYMES.**

No. 70-347.

United States District Court, E. D. Pennsylvania.

Sept. 28, 1979.

Edward C. German, James M. Marsh, Philadelphia, Pa., for David C. Bevan.

Joseph W. Swain, Jr., Philadelphia, Pa., for Symes.

Stuart T. Saunders, Jr., Philadelphia, Pa., for Stuart T. Saunders, Sr.

Carl Helmetag, Jr., Philadelphia, Pa., for Penn Central Corp.

MEMORANDUM AND ORDER NO. 4001.

FULLAM, District Judge.

Order No. 1087, *In re Penn Central Trans. Co.*, 354 F.Supp. 408 (E.D.Pa.1973), *aff'd*, 484 F.2d 1300 (3d Cir. 1973), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974) determined the extent to which claims of employees and former employees under certain unfunded pension plans and a contingent compensation plan should be paid during reorganization as operating expenses of the Debtor. The Trustees were authorized to continue their funding of the funded pension programs, and entitlements thereunder were not affected by Order No. 1087. However, the Order imposed two important limitations upon payment to employees or former employees under unfunded programs, as current operating expenses: (1) entitlements under the Contingent Compensation Plan were to be calculated on the basis of a formula tied to the allotments made to the program on behalf of each employee (thus excluding appreciation in value from investments by the fund); and (2) no payments to an employee under any unfunded program could be made if, by reason thereof, such employee would receive from the Debtor more than $50,000 per year, in the aggregate, under the Debtor's pension programs or otherwise.

In conformity with the Plan of Reorganization, Penn Central Corporation has assumed liability for continued payment, on a current basis, of the benefits which were authorized to be paid by Order No. 1087. The difference between the level of payments contemplated by Order No. 1087, and the full amounts provided under the terms of the various plans, gives rise to valid claims against the Debtor's estate. They are, however, plainly claims arising under prebankruptcy executory contracts of the Debtor, and therefore, one would suppose, to be treated as unsecured general obligations of the Debtor, Class M. The petitions now before the Court seek better treatment of these claims.

Had it not been for the $50,000 limitation imposed by Order No. 1087, the petitioners would each have received current benefits, in cash, greatly in excess of the amounts they were actually paid. It is argued that the $50,000 limit (and, indeed, the other limitations) were imposed in order to preserve cash needed to operate the railroad, and because it was deemed fitting to limit pension payments to former executives so long as the Debtor was unable to pay state and local taxes, prebankruptcy personal injury claims, etc.; that these reasons no longer prevail, and cash is now available; and that the $50,000 limitation should therefore now be vacated. The effect of vacating the $50,000 limitation, in the petitioners' view, would be to treat petitioners' claims as unpaid administration expenses, payable in cash.

It is my opinion that petitioners' claims cannot and should not be treated as claims of administration entitled to payment in cash, except to the extent contemplated by Order No. 1087. In the first place, I believe it is at least arguable that that Order, affirmed on appeal, represents the "law of the case" and is *res judicata*. While both this Court and the Court of Appeals expressly left open the question of the proper classification of such claims in a Plan of Reorganization, to order petitioners' claims paid in cash would be inconsistent with the rationale employed by the Court of Appeals in affirming Order No. 1087. The Court of Appeals pointed out that these are unsecured claims based upon pre-bankruptcy executory contracts. It acknowledged that, as this Court had held, it has become customary in railroad reorganizations to permit the trustees to continue to honor such unfunded pension obligations to some extent, in order to maintain the morale of current and future employees. But the Court was careful to avoid endorsing that holding. The Court stated:

"Apparently payment of unfunded pension liabilities during a railroad reorganization is a recognized tradition in the industry . . . This Court has not explicitly ruled on the practice. Since no party to this appeal challenges it, we accept it, for present purposes, as a gov-

erning rule. . . ." (484 F.2d 1300, at pp. 1304–1305.)

"Accepting, as have the parties, the general principle that some payments of unfunded pension liabilities are a practical necessity if a railroad is to be successfully operated in reorganization, it does not follow that in applying the principle the reorganization court must enforce each executory pension contract exactly in accordance with its terms . . . Accepting the principle of some payment of unfunded pension liabilities, no more is required than a responsible exercise of equitable discretion. . . ." (*Ibid.,* pp. 1305–1306.)

"We emphasize that because the parties agree that some payments on unfunded pension liabilities during a railroad reorganization are at least proper, this opinion has not dealt definitively with questions of the extent of or the limitations upon the reorganization court's power in this respect. We also emphasize that the orders appealed from do not determine how the appellants' claims should be dealt with in a plan of reorganization or a liquidation." (*Ibid.,* p. 1306.)

The plain import of the Court of Appeals' Opinion is that the only possible justification for according prebankruptcy unfunded pension obligations treatment as current expenses of operation is a valid determination by the district court, in the course of the reorganization proceedings, that certain levels of current payments are, as a practical matter, necessary to the smooth functioning of the railroad. That level of payments was determined in this case by Order No. 1087 in 1973. That determination was not revised while the Debtor was operating the railroad, and there is no rail-related justification for revising it now. The cash payments sought by the petitioners will not be authorized.

The remaining question is the proper classification of these claims under the Plan of Reorganization. Should they be treated like any other prebankruptcy unsecured claim, or do they have unique characteristics which warrant some form of priority?

It is first necessary to specify just what claims are made by each of the petitioners. Mr. Bevan has a claim for $325,815 for amounts which would have been paid to him pursuant to Order No. 1087 under the Contingent Compensation Plan, but for the $50,000 limitation; contract pension payments of $210,000 and unpaid salary of $22,-500, both of which would have been paid him but for the $50,000 limitation. He also claims annual future contract pension payments during his lifetime at the rate of $27,627. Mr. Saunders has a claim for $412,000 under the contingent compensation formula approved by Order No. 1087, contract pension payments of $304,783, and unpaid salary of $20,000; plus annual future contract pension payments at the rate of $37,356 during his lifetime and one-half of that amount for his widow, if she survives. The Symes estate has a claim for $70,000 under a special annual pension of $10,000 awarded him by the Board of Directors of the railroad on October 23, 1968.

These claims might appropriately be classified under the Plan as either Class M (general unsecured) or Class H (unsecured claims entitled to some priority). It seems to me that claims arising from unpaid compensation for services performed present a more appealing case for inclusion in Class H than do claims for unfunded retirement benefits, in this context.

All other employees of the Debtor have been paid their agreed-upon compensation in full. The formula payments under the Contingent Compensation Fund represent, in effect, reimbursement to each participant of the amount he or she actually paid into the fund. All participants in the Contingent Compensation Plan, including these petitioners, are relegated to Class M with respect to their claims under the Plan in excess of the formula payments. Thus, according Class H priority to petitioners' claims for amounts unpaid under the Contingent Compensation Plan formula established by Order No. 1087 would mitigate the disparity among participants in the Contingent Compensation Plan.

On the other hand, I perceive no injustice in denying immediate payment in cash of these claims of the petitioners, or in relegating their contract pension payments (in excess of the aggregate $50,000 limit) to Class M status. To the extent that these classifications result in some portion of petitioners' claims being treated differently from the claims of others under the same programs, the justification lies in the decidedly generous provisions of petitioners' contractual arrangements and, particularly in the case of Messrs. Bevan and Saunders, other equitable considerations.

All three of the petitioners were defendants in the MDL 56 *Penn Central Securities Litigation* involving, *inter alia,* significant and pervasive charges of mismanagement and misconduct. In settlement of that litigation, Messrs. Bevan and Saunders were required to make substantial payments to the settlement fund. (Mr. Symes apparently played only a minor role, at best, in the events giving rise to that litigation, and the contribution to the settlement fund made in his behalf was quite modest.) While liability was warmly contested, and was not established by the settlement, it is very clear that the settlement was reached on the basis of these defendants' limited financial resources, and that the litigation would have been pursued further but for the perception that any greater recovery would probably not be collectible. This does not mean, as some of Penn Central's present argument seems to suggest, that petitioners' present claims should be forfeited, as a further contribution toward payment of the civil liability asserted in MDL 56. This Court has neither the power, or the inclination, to reopen that litigation. But the totality of the circumstances cannot be ignored in performing the task of equitable classification of petitioners' claims.

Petitioners' prebankruptcy salaries were princely, and their pension contracts equally generous. They complain that the $50,000 limitation and the proposed classification are unjust because the reorganization turned out better than seemed likely in 1973 when the limitation was imposed. Penn Central's countervailing argument, that the enhanced value of petitioners' claims which would result if petitioners' arguments were accepted would undermine the basis on which MDL 56 was settled, is not wholly lacking in force. If one side relies upon changes in circumstances, the other side should be free to refer to other changes in circumstances.[1]

The salary and Contingent Compensation Plan claims will be classified as Class H claims, and the remaining claims as Class M claims.

---

1. There is a reference in the record to a release executed by Mr. Saunders in connection with the MDL 56 settlement. As I understand it, Penn Central does not now contend that the release is a total bar to the claims now asserted by Mr. Saunders, but the extent to which the release is relied upon is not altogether clear. If any of the parties contends that the order now being entered is inconsistent with the provisions of the release, a motion for reconsideration may be filed within ten days.