William T. BRODERICK and Boston Police Superior Officers Federation, Plaintiffs,

v.

Francis M. ROACHE, et al., Defendants.

Civ. A. No. 90–11500–MA.

United States District Court, D. Massachusetts.

Nov. 21, 1990.

James F. Lamond, Alan J. McDonald, McDonald, Noonan & Kaplan, Newton, Mass., for plaintiffs.

Paul J. Gillespie, Driscoll, Gillespie and Stanton, Lynnfield, Mass., James A. Brett, Reed, O'Reilly & Brett, Boston, Mass., Walter B. Prince, Rosanna Cavallaro, Peckham,

Lobel, Casey, Prince & Tye, Boston, Mass., Peter Antell, Antell & Blacker, Boston, Mass., John P. Roache, City of Boston Law Dept., Boston, Mass., Michael C. Bolden, Asst. Corp. Counsel, City of Boston Law Dept., Boston, Mass., Kevin S. McDermott, Boston Police Dept., Corporate Counsel, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiffs, William T. Broderick and the Boston Police Superior Officer's Federation ("Federation") filed this suit against the City of Boston ("City") and various officials employed by the Boston Police Department [1] ("BPD") on June 12, 1990, alleging state and federal constitutional and statutory causes of action. The Federation is the collective bargaining representative of all uniformed personnel of the BPD employed in the positions of sergeant, lieutenant, and captain. Broderick is the current President of the Federation, and has been employed by the BPD since 1969. He has been an active member of the union for some time.

The complaint outlines a number of instances when Broderick, either on behalf of the Federation or of himself, opposed various BPD policies and procedures. The plaintiffs allege that the defendants repeatedly engaged in conduct which was intended both to punish Broderick for his opposition and to chill any further opposition to BPD actions by either Broderick or the Federation.[2] The plaintiffs seek an injunction against further discriminatory actions against Broderick, money damages for civil rights violations, treble damages for civil RICO claims, punitive damages against all defendants except the City of Boston, and costs and attorney's fees.[3] As the specifics of the factual allegations involved are important to the resolution of this motion, they will be described at some length.

The activities for which Broderick claims constitutional protection are detailed in ¶ 13 of the complaint. Broderick alleges that he made numerous statements to the media commencing in March of 1989, which were critical of the operation of the BPD. The statements apparently covered a range of subjects affecting the police department, including the propriety and constitutionality of various BPD law enforcement policies and practices which were under public scrutiny at the time, as well as employment policies which affected the police officers whom Broderick represented as Federation president.[4] Broderick also gave testimony to the Public Safety Committee of the Boston City Council in May, 1989 which was critical of BPD policies regarding assignment of police officers.

Broderick further alleges that since 1987 he has pursued numerous legal actions against the BPD on behalf of himself and the Federation. In 1987, as a member of the Promotions Committee of the Federation, Broderick participated in criticism of a proposed promotional exam for the position of police lieutenant and in January of 1988 that dispute engendered a lawsuit in which

1. The "BPD defendants" Francis M. Roache, the Police Commissioner, James Hart, the Legal and Administrative Advisor, Paul Evans, the Superintendent in Chief of the Bureau of Field Service, Arthur Morgan, the Deputy Superintendent of the Internal Affairs Division, Robert Conlon, a Sergeant Detective in the Internal Affairs Division, and Charles Burke, the Deputy Director, of the Bureau of Administrative Services were all sued in both their individual and official capacities.

2. All of the counts except Count Five, the civil rights conspiracy charge, name both Broderick and the Federation as plaintiffs. For ease of reference, the plaintiffs will be referred to collectively herein as Broderick.

3. An additional motion for a temporary restraining order or alternatively a preliminary injunction to delay a disciplinary proceeding against Broderick scheduled for June was denied by this court on June 13, 1990.

4. Specific articles referred to in the complaint are a May, 1989 Boston Magazine article in which comments by Broderick critical of Roache were quoted; comments attributed to Broderick in a February, 1990 Boston Herald article on "impact of budget cuts on public safety", which was critical of Roache and the BPD; and a December, 1989 Boston Globe article on the failure of the BPD to hold a captain's exam, which mentions the "stop and frisk issue".

the BPD and the Federation took antagonistic positions. Also in 1988, the Federation and Broderick joined in a suit against the BPD for failure to promote Broderick, and when a judgment favorable to Broderick was ignored by the BPD, the court held the BPD in contempt. Broderick publicized the contempt finding by drawing it to the attention of the Boston Globe, and wrote letters to Mayor Flynn and Commissioner Roache demanding removal of Roache because of the contempt finding. He also participated in enforcement of a binding arbiter's decision prohibiting the retaliatory transfer of Federation officers. Finally, in February of 1990 he participated in legal actions by the Federation against the BPD procedure for appointment of lieutenants.

In retaliation, Broderick alleges, the BPD engaged in a pattern of harassment and retaliatory action against Broderick. They subjected him to three different disciplinary hearings which were not justified, refused to promote him when he was entitled to promotion, refused to give him permission to practice law in his spare time when other officers similarly situated received such permission, and kept him under surveillance in an attempt to prevent him from speaking to the press. After statements in the press attributed to Broderick charged the BPD with having a policy of carrying out illegal searches, Evans reprimanded and then interrogated Broderick. In addition, defendant Hart verbally attacked Broderick in public in March of 1988.

This matter is before me now on the defendant Paul Evans's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).[5] In deciding a motion for dismissal, the allegations of the complaint must be taken as true. *Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1202 (1st Cir.

1987). I will discuss the claims against Paul Evans *seriatim.*

*1. Constitutional violations actionable under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act*

■ Count One of the complaint is a claim under 42 U.S.C. § 1983, ("section 1983") alleging that the BPD defendants violated the First and Fourteenth Amendments by retaliating against Broderick for his exercise of his constitutionally guaranteed rights to speak on matters of public concern, to participate in union activities, and to file actions in courts, and attempting to chill the future exercise of such constitutionally protected activities. Count Two alleges that the same conduct violated the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I.[6]

The right of a public employee to engage in speech on matters of public concern without fear of retaliation by his employer is clearly established. *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). However, liability under section 1983 is limited to adverse employment decisions motivated by speech on matters of public concern. "Our responsibility is to ensure that citizens are not deprived of *fundamental rights* by virtue of working for the government ..." *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) (emphasis added). Although there may be some First Amendment protection of speech regarding private matters, the Supreme Court has not afforded it the same protection in an employment context, because of the strong interests of the government as employer in maintaining an effective work force. *See Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731,

---

5. Evans's motion to dismiss focuses on the section 1983 claims, but these claims encompass the essence of the claim under the Massachusetts Civil Rights Act, Count Two of the complaint, and the civil conspiracy claim, Count Five. Evans was added as a defendant in the civil RICO count after the motion to dismiss was filed. Accordingly, in the interests of judicial economy, all of the allegations against Evans will be considered under 12(b)(6) at this juncture. Evans's motion for summary judg-

ment is still pending, and will be decided after further submissions by the parties in accordance with the directions of this memorandum and order.

6. Count Three is a section 1983 charge against the City. As the defendant Paul Evans is not implicated in this count, it will not be discussed here, although of course the same basic principles apply.

1734–35, 20 L.Ed.2d 811 (1968); *Rankin,* 483 U.S. at 390–91, 107 S.Ct. at 2900–2901. "[A] federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690.[7]

 In the context of a 12(b)(6) motion, the complaint cannot be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Whether the speech pertains to a matter of public concern must be determined by the content, form and context of a given statement, *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91. The ultimate issue, whether the speech is protected, is a question of law, not fact. *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7. Even viewed under this liberal standard, it is clear that some of the plaintiff's factual allegations do not state a claim for which relief could be granted under section 1983. A number of the incidents relate only to internal departmental employment matters which affect Broderick and other BPD employees. While Broderick has a right to disagree with his employer, belong to a union and use the courts and other dispute resolving forums to further and safeguard his rights, the First Amendment does not afford him special protection as a public employee for these activities. These are essentially private matters, and have been explicitly excluded from the doctrine by the Supreme Court. *See Connick,* 461 U.S. at 147, 103 S.Ct. at 1690. While Broderick's employer may in fact be engaging in conduct designed to discourage his vigorous advocacy of the union, and to weaken the Federation by intimidating one of its most influential spokespersons, Broderick's remedy may be found in the state and federal labor laws specifically designed to prevent employer abuse of power in such labor disputes. See for example, 29 U.S.C. §§ 157, 158; M.G.L. c. 150E and c. 31 § 42.

██ Some of the activities alleged by Broderick to have brought the wrath of the BPD upon him are at least arguably protected, however. In civil rights cases implicating First Amendment rights, summary judgment is to be favored over dismissal if the question is a close one. *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). The factual allegations which accordingly survive this motion are public statements critical of the BPD and Commissioner Roache which are alleged in ¶ 13(f), (g), (i), and (k) of the complaint. The complaint is not precise about the content, form, and context of these statements, but the allegations are specific enough to raise the question of whether they were statements protected under the Supreme Court's analysis of First Amendment violations actionable under section 1983.[8]

### 2. Civil RICO claim

██ Count Four of the complaint charges that the defendants Roache, Hart,

---

**7.** *Cf., Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976) (rejecting constitutional challenge of state employer's discharge of employee as a denial of property under the Due Process Clause of the 14th amendment: "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies").

**8.** These statements to the media about the allegedly unconstitutional policies of the BPD may ultimately turn out to be nothing more than additional ammunition designed to harass and embarrass the BPD and Commissioner Roache in what is quite clearly a longstanding, bitter, and unflattering confrontation between the parties. If so, section 1983 may not be used as a shield for Broderick to protect him against legitimate attempts by the BPD to curb his disruptive influence, and discovery may not be used as a sword to further harass the enemy. Criticism of internal workplace policies, which could be said to be of public concern when the employer is a public agency, is not protected speech when it is primarily intended to affect the internal workings of the agency. *See Connick,* 461 U.S. at 148, 103 S.Ct. at 1690–91 ("While discipline and morale in the workplace are related to an agency's efficient performance of its duties, the focus of [the employee's speech] is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors.").

Evans and Morgan engaged in a RICO conspiracy within the meaning of 18 U.S.C. § 1961 *et seq.*,[9] and that they are liable to Broderick under the civil portion of the law, § 1964(c). Naming the BPD as the enterprise through which the defendants engaged in the "pattern of racketeering", and two acts of extortion in violation of M.G.L. c. 265 § 25 as the predicate acts, Broderick claims that the extortion occurred when the defendants

> verbally or by written communication, maliciously and unlawfully used and/or threatened to use against Broderick the power and authority vested in them to compel Broderick, against his will, to cease exercising his rights to free speech and free association, to have access to the Courts, and his rights under c. 150E.

(Complaint at ¶ 52).

While it is questionable whether Broderick has sufficiently alleged a "pattern of racketeering activity" within the meaning of RICO, *see Fleet Credit Corp. v. Sion,* 893 F.2d 441, 444–48 (1st Cir.1990), the claim fails at the outset because the conduct alleged is clearly not chargeable under the Massachusetts extortion statute, c. 265 § 25.[10] One of the essential elements of

§ 25 is a malicious threat. *See, e.g., Commonwealth v. Miller,* 385 Mass. 521, 526, 432 N.E.2d 463 (1982).

In accordance with the policies of notice pleading and of liberal construction of pleadings, *See* Fed.R.Civ.P. 8; *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969), I have read the complaint carefully, and made all possible inferences in favor of the plaintiff. An assertion of threats is made formulaically in ¶ 52, which sets forth the legal theory under which the plaintiff seeks to recover, but the lengthy factual section makes no mention of any action which is even suggestive of a threat being made. In a case such as this one, where the plaintiff has submitted an extremely detailed verified complaint, such a glaring omission is undeniably significant.[11] While "[a] plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim ... when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *O'Brien v. Di Grazia,* 544 F.2d 543, 544 n. 3 (1st Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *Accord, Scheid v. Fanny Farmer*

---

**9.** The complaint mistakenly cites 18 U.S.C. § 1954, but quotes the correct statutory language from § 1962(c). § 1962(c) prohibits the conduct of the affairs of an enterprise through a pattern of racketeering activity. § 1964(c) provides a civil remedy for "any person injured in his business or property by reason of a violation" of § 1962. 18 U.S.C. § 1961 defines "racketeering activity" to include: "any act or threat involving ... extortion ... which is chargeable under State law and punishable by imprisonment for more than one year ..." 18 U.S.C. § 1961(1). The reference to state laws is intended to be descriptive of the type of conduct which is actionable under § 1964(c); the defendant need not have been indicted or convicted under the law, but only chargeable under the terms of the state statute. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 490–91, 105 S.Ct. 3275, 3281–82, 87 L.Ed.2d 346 (1985).

**10.** c. 265 § 25 provides that:

Whoever, verbally or by a written or printed communication, maliciously threatens to accuse another of a crime or offence, or by a verbal or written or printed communication maliciously threatens an injury to the person

or property of another, or any police officer or person having the powers of a police officer, or any officer, or employee of any licensing authority who verbally or by written or printed communication maliciously and unlawfully uses or threatens to use against another the power or authority vested in him, with intent thereby to extort money or any pecuniary advantage, or with intent to compel any person to do any act against his will ...

While the plaintiffs apparently misread the statute to suggest that as a public official Evans could be liable for "using or threatening to use against another the power or authority", a phrase which applies to police officers acting as police officers, not an employer who happens to work in a police department, the complaint does not fail on those grounds because Evans could conceivably be liable if he threatened injury to Broderick's reputation (*see Commonwealth v. Miller,* 385 Mass. 521, 527, 432 N.E.2d 463 (1982)) or to his property, by disciplining him and suspending his pay.

**11.** Moreover, the facts omitted would not be those peculiarly accessible to the defendants. A threat is by definition communicated. *See Black's Law Dictionary* (5th ed. 1983).

*Candy Shops Inc.*, 859 F.2d 434 (6th Cir. 1988). Moreover, "[C]ourts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened ...'" *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir.1977) (quoting Wright and Miller, 5 *Federal Practice and Procedure* § 1357 at p. 596 (1969)).

### 3. Civil rights conspiracy

■ Count Five alleges a conspiracy by the BPD defendants to deprive Broderick of his constitutional and statutory rights as enumerated in Count One. In the First Circuit, "for a [civil rights] conspiracy to be actionable under section 1983 the plaintiff has to prove that 'there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws'". *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir.1988) (quoting *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980)). Therefore, this claim can only survive this motion to the extent that the plaintiff can show that his First Amendment rights were indeed violated by the actions of the defendants. See discussion beginning at page 292, *supra.*

### ORDER

Count Four is dismissed against the defendant Paul Evans. Since the question of whether some of Broderick's statements were ones of public concern protected by the Constitution from an employer's hostile actions cannot be resolved at this stage, the claims against Paul Evans in Counts One, Two, and Five survive this motion but the factual issues raised are narrowed in accordance with the foregoing discussion. The determination of whether the statements were of public concern within the meaning of the doctrine is a matter of law, however, and the case may consequently be resolvable at summary judgment on that issue alone, without inquiry into the intent of the defendant or the impact of any bad intent upon an employment decision, *see Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Therefore, delving into these latter issues may be deferred until it is clear that it is necessary. Such a course may save time and money, and prevent the exacerbation of tensions which are obviously already serious and may well interfere with the work with which all parties are most concerned, the quality and integrity of the Boston Police Department. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (federal judicial policy to weed out insubstantial § 1983 suits and minimize excessive disruption of government and "diversion of official energy from pressing public issue").[12] I hereby order that discovery be stayed except to the extent necessary to clarify the form, context, and content of the statements described in ¶ 13(f), (g), (i), and (k) so that a preliminary ruling may be made upon whether they qualify as protected statements. Documentary evidence and legal arguments already advanced by the defendant in his motion for summary judgment and supporting memorandum dated September 18, 1990 may be incorporated by reference into any further filings submitted on the summary judgment questions; however, in the light of the complexity of law and long-standing animosities apparent in the facts of this case, strict compliance with the requirements of Local Rule 56.1 (formerly, L.R. 18) will be expected from both parties. All submissions in accordance with this or-

---

**12.** If, however, any of the statements are found to have been protected, the plaintiffs will be permitted to proceed with discovery upon the issue of whether the adverse employment actions taken against Broderick were motivated by a desire to retaliate against him for exercising his constitutional rights. Because the constitutional rights at issue in this case are clearly established, the qualified immunity defense is not available and the good faith of the defendant is irrelevant. *Miller v. Hull*, 878 F.2d 523, 534 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989). Instead, the inquiry will shift to whether the *Mount Healthy* burdens are met by the parties: whether in fact retaliation or intimidation improperly motivated the employment decision, *not* whether Evans in good faith thought that it was acceptable to punish Broderick for his objectionable speech.

der are to be filed twenty (20) days from date.

SO ORDERED.