Elmer WOLF, Terry Ellingson, Michael Storhaug, Clyle Knoll, and Chuck Blumhardt, Plaintiffs,

v.

CITY OF ABERDEEN, SOUTH DAKOTA; Tim G. Rich, Mayor, Defendants.

Civ. No. 90–1014.

United States District Court, D. South Dakota, N.D.

Feb. 25, 1991.

Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., Joseph Cohen, Littleton, Colo., Paul Riley, Aberdeen, S.D. for plaintiffs.

Thomas M. Tobin, City Atty., City of Aberdeen, Aberdeen, S.D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Plaintiff employees of the City of Aberdeen seek a declaration and order of this Court permanently enjoining the defendant City of Aberdeen (City) from enforcing the "Media Contacts" ordinance enacted by the Aberdeen City Commission.

### FACTS

On September 18, 1989, the Aberdeen City Commissioners approved the following ordinance entitled "Media Contacts Policy # 07":

> No employee of the City of Aberdeen shall make any speech or make any advertisement or grant any interview with any employee of any radio station, television station or newspaper, while on duty, without getting prior approval from the employee's department head. Individual employees shall not comment on internal business decisions or departmental rules and regulations without first clearing these comments with the department head. Any employee who violates this section shall be subject to disciplinary actions. This section shall not apply to union officials acting on behalf of the union while off duty.

Plaintiffs are firemen employed by the City and are subject to the "Media Contacts" ordinance. Affidavits submitted by individual plaintiffs indicate that each would like to be heard in a public forum on issues of public concern including certain actions of the fire department. The plaintiffs express concern that, according to their interpretation of the ordinance, they would be subject to retaliation by the City as a result of expressing their opinions on certain actions taken by the City, and, specifically, certain actions of the City Commission regarding fire department administration.

### DISCUSSION AND ANALYSIS

It has long been settled that a state or local unit of government may not condition public employment on a basis that infringes upon the employee's constitutionally-protected interest in freedom of ex-

pression. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). However, a public employee's right to expression is not limitless. The Court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35.

> This balancing is necessary in order to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment. On the one hand, public employers are employers, concerned with the efficient function of their operations; review of every personnel decision made by a public employer could, in the long run, hamper the performance of public functions. On the other hand, "the threat of dismissal from public employment is ... a potent means of inhibiting speech." *Pickering*, 391 U.S. [563] at 574, 20 L.Ed.2d 811, 88 S.Ct. 1731 [at 1737]. Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employees' speech.

*Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987).

■ Thus, as the Supreme Court explained in *Connick v. Myers*, speech by a public employee is protected by the First Amendment if it touches upon a matter of public concern and does not substantially interfere with official responsibilities. 461 U.S. at 150, 103 S.Ct. at 1691–92. This is not to say that speech which does not touch on a matter of public concern is totally beyond the protection of the First Amendment. However, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, ab-

sent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.*

Plaintiffs seek to invalidate the Media Contacts ordinance on its face. There are two ways in which an ordinance could be considered invalid on its face. An ordinance may be invalid on its face if it is unconstitutional in every conceivable application or if it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad. *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772 (1984). Plaintiffs challenge the ordinance as being unconstitutionally overbroad.

■ Statutes or ordinances which attempt to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973). Where an ordinance is not narrowly drawn, or is "overbroad," the ordinance's very existence may inhibit or chill the free expression of speech protected by the First Amendment. For this reason, an overbroad ordinance may be struck down entirely even though, as applied, it may prohibit some forms of expression which are not constitutionally protected. *Id.* "[T]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the inhibitory effects of overly broad statutes." *Id.*

■ A statute or ordinance is not overly broad simply because one can conceive of some impermissible applications of the statute. The overbreadth of the statute must be not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. *Id.* at 615, 93 S.Ct. at 2917–18. "In short, there must be a real-

istic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court for it to be facially challenged on overbreadth grounds." *Vincent*, 466 U.S. at 801, 104 S.Ct. at 2126.

This case is complicated by the fact that the ordinance in question is an employment policy statement rather than a prohibition on the citizenry of Aberdeen. A city such as Aberdeen and, particularly, a fire department, "must have the authority to sanction its workers for releasing confidential facts that will compromise ongoing investigations or business negotiations; for spreading malicious gossip about co-workers; for misrepresenting departmental positions; for lying; or for acting without permission as official spokesperson for the department." *Moore v. City of Kilgore*, 877 F.2d 364, 392 (5th Cir.1989). As the court recognized in a similar controversy in *Moore*, a public employer may constitutionally punish unprotected speech even in the absence of any written policy. 877 F.2d at 391 *citing Connick v. Myers*, 461 U.S. 138 (1983). Thus in enacting this ordinance, the City in reality has gained no additional authority; for as an employer, the City had the power to discipline employees for unprotected misconduct. Conversely, the city loses no authority in the absence of the statute; for as a public entity, it cannot punish its employees for exercising their right of free speech with or without an ordinance. The ordinance, therefore, acts largely as a notice to employees as to how the City intends to use the discretion that it inherently holds in its position as employer. *See Id.*

The parties agree that the Media Contacts ordinance can be divided into two parts for discussion purposes:

1. Any on-duty employee must get permission from the department head prior to making a speech, making an advertisement or granting an interview with any member of the media.

2. Employees are not to comment on internal business decisions or departmental rules and regulations without first clearing the comments with the department head.

The Court will address each part separately.

### On Duty Restriction

The first part of the ordinance forbids employees from making a speech or an advertisement or granting an interview with any member of the media while on duty unless permission is received from the employee's department head. Employees violating this rule are subject to disciplinary actions. The City claims that it is only good administration to require employees to get permission before leaving their duties to give a speech or grant an interview to the media. The Court agrees that there can be little dispute that the City, as an employer, has wide discretion to direct what an employee does on City time. For example, an ordinance which required an employee to receive his supervisor's permission before leaving his post would not be constitutionally questioned. This is not, however, what the Media Contacts ordinance pretends to do. The ordinance restricts only an employee's freedom to speak. It is an overt attempt to control the content of an employee's speech. Were the City concerned only about the time used by an employee to give a speech or grant an interview, other policies less threatening to the constitutionally protected right of free speech could be chosen.

In determining whether a public employee's speech is constitutionally protected, the court may consider, as a factor, whether the speech was made while the employee was on the job. *Connick v. Myers*, 461 U.S. at 154, 103 S.Ct. at 1693–94. This does not, however, mean that all speech made on the job is unprotected. Just as plaintiffs do not lose their right to speak on matters of public importance by virtue of their employment as city firemen, plaintiffs also do not totally lose their right to speak when they enter the firehouse door. An employee can be disciplined for not fulfilling the responsibilities of his or her position. If the employee is disciplined for neglecting his or her duties while engaged in a constitutionally protected activity, this

is constitutionally acceptable if the discipline is imposed for the neglect of duty and not for the exercise of the employee's rights. But the Media Contacts ordinance singles out speech as the activity for which discipline can be imposed. Under the ordinance, every "speech" or "interview" can make an employee subject to discipline regardless of the circumstances. This makes speech the subject of the punishment and not the concern for the administration of the workplace. As such, Part 1 of the Media Contacts ordinance is substantially overbroad and will have a chilling effect on the exercise of constitutionally protected speech. It is therefore unconstitutional on its face.

*Internal Business Decisions and Departmental Rules Restrictions*

█ The second part of the Media Contacts ordinance prohibits an employee from commenting on internal business decisions or departmental rules and regulations, at any time, without first clearing those comments with the department head. As previously discussed, a public employer may not punish an employee for speaking out as a citizen on matters of public concern unless the speech substantially interferes with official responsibilities. *Connick v. Myers*, 461 U.S. at 150, 103 S.Ct. at 1691–92. In addition to the employee's right to speak, we must consider the public's right to information from the employee's uniquely informed perspective.

█ While the City argues that this policy is narrowly defined to encompass only areas of speech which can be constitutionally limited by a public employer, it is clear the ordinance's prohibitions extend much further. The public has a great deal of interest in and a right to hear the opinions of City employees with regard to the internal business decisions and departmental rules and regulations of City departments.

Shift hours of firemen, overtime pay, equipment purchases, and the Media Contacts ordinance itself are all examples of topics of public concern that would fall within the plain meaning of the ordinance. In fact, the Court can discern a great many more areas of protected speech that would be restricted by the ordinance than areas of unprotected speech which could be constitutionally restricted. Accordingly, the Court finds that Part 2 of the Media Contacts ordinance is substantially overbroad and will effectively chill expression of constitutionally protected free speech. It is therefore unconstitutional on its face.[1]

CONCLUSION

Both Part 1 and Part 2 of the Media Contacts ordinance are unconstitutionally overbroad and the City is permanently enjoined from enforcing them. This does not mean that the City may not exercise its powers as an employer and discipline employees in a constitutionally permitted way. It does, however, mean that the City may not use the ordinance as a threat to chill the protected speech of city employees.

---

1. Both parts of the ordinance contain a clause which allows employees to speak if prior approval is received from the department head. This does not save the ordinance and arguably contributes to its unconstitutionality. The ordinance does not define how the department head is to consider employee's requests to speak. An ordinance which places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, ——, 110 S.Ct. 596, ——, 107 L.Ed.2d 603, 618 (1990). This is constitutionally impermissible. *Hynes v. Mayor and Council of the Borough of Oradell*, 425 U.S. 610, 617, 96 S.Ct. 1755, 1759, 48 L.Ed.2d 243 (1976).