**PROVIDENCE FIREFIGHTERS LOCAL 799; George S. Farrell; Paul Rossiter; James Creighton, and George Calise, Plaintiffs,**

v.

**CITY OF PROVIDENCE; John J. Partington, in his official capacity as Providence Commissioner of Public Safety; James F. Rattigan, in his official capacity as Chief of the Providence Fire Dept., Defendants.**

No. Civ.A. 97–318L.

United States District Court, D. Rhode Island.

Oct. 27, 1998.

Fidelma L. Fitzpatrick, Providence, RI, for plaintiffs.

Kevin F. McHugh, Providence, RI, for defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

George S. Farrell, Paul Rossiter, James Creighton and George Calise are firefighters in the Providence Fire Department and members and/or officers of their union, Local 799. The firefighters and the union ("plaintiffs") have sued the City of Providence, the Commissioner of Public Safety and the Providence Fire Chief ("defendants") to enjoin the enforcement of several fire department rules that restrict a firefighter's ability to speak to the public.

## BACKGROUND

On or around February 21, 1997, Fire Chief Rattigan issued General Order No. 13:

> In accordance with the Rules and Regulations governing the Department this General Order is issued to serve notice to all members that only the Chief of Department has the authority to discuss for publication, matters concerning the Department. This general order is also to serve notice that only the Chief of Department may deliver any address, lecture or speech on Providence Fire Department matters. Members shall not participate in the above stated activities without the approval of the Chief of Department. Failure to comply with these stated Rules and Regulations of the Department shall result in the preferral of Departmental Charges.

That order augmented the already-existing Rules and Regulations that provided, in part:

> 23. Members shall not discuss for publication matters concerning the Department without the approval of the Chief of Department.

> 24. Members shall not deliver any address, lecture or speech on Providence Fire Department matters without the approval of the Chief of the Department. Request for such approval shall be forwarded through official channels.

Plaintiffs object to the order and the regulations ("the Fire Department rules") on the grounds that they violate the First Amend-

ment. Plaintiffs have asserted that they wish to speak to the public and the media on issues such as health and safety issues, fire safety and prevention, fire code deficiencies in public buildings, and fire code deficiencies in public schools.

None of the plaintiffs has actually violated the Fire Department rules. They claim that the threat of discharge and discipline has held their tongues.

This case is before this Court on cross motions for summary judgment. For the reasons discussed below, plaintiffs' motion is granted and defendants' motion is denied. This Court voids the order and regulations at issue and enjoins defendants from enforcing them.

### I. Legal Standard for Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991).

The coincidence that both parties move simultaneously for summary judgment does not relax the standards under Rule 56. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996). Barring special circumstances, the District Court must consider each motion separately, drawing inferences against each movant in turn. *See id.*

### II. Discussion

To put the parties on equal footing, it is probably best to articulate the law that rests as the bedrock of this decision:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for redress of grievances.

U.S. Const.Amend. I. This First Amendment, applied to the states through the Fourteenth Amendment, forbids government from restricting the rights of its citizens to speak. Certainly, there are exceptions, but this case does not raise any of them. Despite the City's predilection for sweeping bans on speech, *see D'Ambra v. City of Providence*, 21 F.Supp.2d 106 (D.R.I.1998), the First Amendment protects Americans from the censorship that the Fire Department rules inevitably create.

### A. Defendants' arguments against reaching constitutional issues

Between the briefs and oral arguments, defendants took two cannon shots at arguing that this Court should not reach the constitutional issue raised by plaintiffs.

■ On the first, defendants' counsel misappropriates Circuit Judge Stahl's recent harkening to a "fundamental rule of judicial restraint ... that [courts] will not reach constitutional questions in advance of the necessity of deciding them." *Yeo v. Town of Lexington*, 131 F.3d 241, 256 (1st Cir.1997) (Stahl, J. concurring). Judge Stahl was not suggesting that a court deny standing to a legitimate plaintiff to avoid a difficult question. The *Yeo* case, he believed, could be resolved on statutory grounds, specifically the causation language in 42 U.S.C. § 1983. *See id.* In contrast, defendants have not noted any statutory flaws in plaintiffs' case. The standing argument is a jurisdiction issue. To even reach the crossroads that Judge Stahl describes, a court must have already found standing and jurisdiction. Thus, *Yeo* is inapposite to this case.

■ However, defendants raise an arguable theory when they turn to standing itself, averring that no plaintiff has alleged an injury. An injury in fact is one of the three irreducible, minimum constitutional elements of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *Berner v. Delahanty*, 129 F.3d 20, 23–24 (1st Cir.1997); *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir.1995). A plaintiff must have suffered an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *See Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136 (footnote and internal quotations omitted); *Libertad*, 53 F.3d at 436. Plaintiffs must also show "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983); *Berner*, 129 F.3d at 24.

Defendants base their argument on the fact that plaintiffs have never even applied to speak, let alone been rejected or punished by the chief. Plaintiffs say that their First Amendment rights have been violated because the Fire Department rules have a chilling effect. Defendants argue that without being rejected, plaintiffs have suffered no injury.

But defendants ignore the Supreme Court's instruction that the injury can be "actual or *imminent.*" *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136 (emphasis supplied). There is no requirement that plaintiffs sacrifice themselves before they enter federal court. In *Lujan*, there was no allegation that endangered species had yet been driven extinct; the Defenders of Wildlife merely argued they would be injured in the future. *See id.* at 562, 112 S.Ct. at 2137–38. *See also, e.g., Adams v. Watson*, 10 F.3d 915, 920–21 (1st Cir.1993) (holding future economic injury is sufficient to support Article III standing). Similarly, a government employee faced with rules that, if enforced, would violate his First Amendment rights may sue before volunteering his head on the chopping block. This is abundantly clear from the Supreme Court's decision in *United States v. National Treasury Employees Union*, 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). Plaintiffs in that case were government employees who had spoken or written in the past, and although there were no allegations that they had been disciplined for violating the regulations at issue, they had standing. *See id.* at 461–62, 115 S.Ct. at 1010–11.

■ Turning to this case, it is important to note that the deprivation of constitutionally-protected rights for even minimal amounts of time constitutes not only injury, but irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976); *Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 4 (1st Cir.1987). The Fire Department rules pose "imminent" injury in two fashions. First, the fire chief's broad discretion to censor constitutionally-protected speech threatens plaintiffs' rights even if they have never asked the chief for permission. The threat against a person's constitutional rights is sufficient. *See Elrod*, 427 U.S. at 373, 96 S.Ct. at 2689–90. Second, the need for plaintiffs to apply through channels before any speech creates an inherent delay. Even if the chief decided to approve every request for constitutionally-protected speech, plaintiffs would have to wait hours or even days for the permission. Even a temporary restraint on expression may constitute irreparable injury. *See In the Matter of*

*the Providence Journal Co.,* 820 F.2d 1342, 1352–53 (1st Cir.1986).

The individual plaintiffs in this case have sufficiently alleged imminent injury if they exercise their constitutional rights. They have set forth specific facts in affidavits, and thus, have standing to sue. The union may sue under the doctrine of "associational" or "representational" standing, which permits organizations, in certain circumstances, to premise standing entirely upon injuries suffered by their members. *See UFCW v. Brown Group, Inc.,* 517 U.S. 544, 551–58, 116 S.Ct. 1529, 1533–37, 134 L.Ed.2d 758 (1996); *UAW v. Brock,* 477 U.S: 274, 281–83, 106 S.Ct. 2523, 2528–29, 91 L.Ed.2d 228 (1986); *American Postal Workers Union v. Frank,* 968 F.2d 1373, 1375 (1st Cir.1992).

**B.** *The First Amendment*

The Supreme Court set the legal standards for government employees' facial challenge to rules that limit their ability to speak in *United States v. National Treasury Employees Union,* 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) [*hereinafter NTEU*]. Despite defendants' protestations, this case is not controlled by the § 1983 doctrines stated in either *Broderick v. Roache,* 751 F.Supp. 290 (D.Mass.1990) or *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

Nothing in the logic of *Broderick* requires plaintiffs to prove an adverse employment decision against them. The *Broderick* Court held that: "liability under section 1983 is limited to adverse employment decisions motivated by speech on matters of public concern." *Id.* at 292. However, the court was emphasizing *matters of public concern.* Broderick could not recover for adverse actions motivated by private matters. *See id.* at 292–93. In that case, there was no holding that public employees must face discipline before they are protected by the Constitution and § 1983. Similarly, nothing in *Praprotnik* requires plaintiffs to prove that the Fire Department Rules are officially sanctioned or ordered. The *Praprotnik* Court was setting rules for a municipality's financial liability for the acts of its employees. *See Praprotnik,* 485 U.S. at 122, 108 S.Ct. at 923. A jury had

awarded Praprotnik $30,000. *See Praprotnik v. City of St. Louis,* 798 F.2d 1168, 1178 (8th Cir.1986). In contrast, plaintiffs seek injunctive relief. Defendants' reading of *Praprotnik* would allow city workers to violate the Constitution at will except when their actions are ratified by a city commission. Obviously, this cannot be so.

**1.** *The law of NTEU*

The First Amendment's stance on prior restraint echoes the Army adage that "it is better to beg forgiveness than to ask permission." A prior restraint rule that forces a person to ask permission to speak bears a heavier presumption against constitutionality than one that merely penalizes people who have already spoken. *See NTEU,* 513 U.S. at 468, 115 S.Ct. at 1014; *Auburn Police Union v. Carpenter,* 8 F.3d 886, 903 (1st Cir.1993). The litany of cases cited by plaintiffs that voided such prior-restraint rules is commendable, but it need not be repeated here. *NTEU* is so clear and so controlling that stepping beyond its strictures risks turning this simple case into a quagmire.

Pre-clearance procedures constitute prior restraint that "chills potential speech before it happens." *NTEU,* 513 U.S. at 468, 115 S.Ct. at 1014. "Deferring to the Government's speculation about the pernicious effects of thousands of articles and speeches yet to be written or delivered would encroach unacceptably on the First Amendment's protections." *Id.* at 475–76 n. 21, 115 S.Ct. at 1017–18 n. 21.

Therefore, the government must "show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation'" of the government. *Id.* at 468, 115 S.Ct. at 1014 (quoting *Pickering v. Board of Education,* 391 U.S. 563, 571, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968)).

When the government "defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it

must do more than simply 'posit the existence of the disease sought to be cured.' . . . It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Id.* at 475, 115 S.Ct. at 1017 (citations omitted).

2. *Applying to the facts of this case*

■ The evidence is clear that plaintiffs wish to speak as citizens upon matters of public concern. *See NTEU*, 513 U.S. at 466, 115 S.Ct. at 1012–13 (test applies only when employees speak upon matters of public concern). This Court has already defined a matter of public concern as "one relating to [a] matter of political, social, or other concern to the community" and found that public health and safety are clearly matters of public concern. *See Cirelli v. Town of Johnston,* 897 F.Supp. 663, 665–66 (D.R.I.1995). Furthermore, the First Circuit has held that matters of fire department rules, regulations and safety procedure are "prototypical matter[s] of public concern." *Brasslett v. Cota,* 761 F.2d 827, 844 n. 14 (1st Cir.1985). Obviously, plaintiffs have identified issues—including fire department policies and their effect on safety, tax money and fire safety in public buildings and schools—that meet this standard and would be restricted by the Fire Department rules.

■ These restrictions curb a substantial interest held both by plaintiffs and the public in speech on these issues. Public employees "have not relinquished the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest." *NTEU,* 513 U.S. at 465, 115 S.Ct. at 1012 (citations omitted). In this case, plaintiffs have a right to speak freely on such matters without the pre-clearance procedures set forth in the Fire Department rules. Similarly, the public has a substantial interest in hearing from firefighters; it pays the bills, visits the buildings and attends the schools. Thus, substantial weight hangs in the *NTEU* balance against the Fire Department rules.

In contrast, defendants have no substantial interest that requires such sweeping censorship. Almost entirely, defendants offer the vague "speculation about the pernicious ef-

fects" of speech that the Supreme Court explicitly rejected. *NTEU,* 513 U.S. at 475–76 n. 21, 115 S.Ct. at 1017–18 n. 21. Defendants argue that the department must speak with one voice; that the department is a paramilitary organization; and that said speech would compromise the "efficiency, integrity and discipline" of the department. (*See* Def.'s Mem. in Supp. of Their Obj. to Pl.'s Mot. For Sum.J. and Cross–Mot. For Sum.J. at 10; Def. Answers to Pl.'s Interrogatory at ¶¶ 12, 21, 25.)

■ None of these assertions amounts to an ounce on the *NTEU* scale. Although operational efficiency is undoubtably a vital government interest, *see NTEU,* 513 U.S. at 473, 115 S.Ct. at 1016, the government must demonstrate that the harms are real and that the regulation will in fact alleviate those harms in a direct and material way, *see id.* at 475, 115 S.Ct. at 1017. This is not impossible. For an example of such impact, parties need look no farther than defendants' final argument: that firefighters cannot comment publicly on the cause of a fire or the name of someone who perished in a fire. (*See* Def.'s Mem. in Support of Their Obj. to Pl.'s Mot. For Sum.J. and Cross–Mot. For Sum.J. at 9–10). Leaks to the media are a concrete concern with a necessary impact on the fire department. A leak could ruin an investigation and endanger lives. Probably, the fire department can forbid its employees from discussing ongoing investigations; certainly, such a rule would survive summary judgment.

But then, defendants ignored that restrictive option and imposed clumsy and overbroad restrictions on all speech about the fire department. In noting that a "reasonable" burden on expression requires a justification far stronger than mere speculation about serious harms, the *NTEU* Court quoted a statement by Justice Brandeis:

Fear of serious injury cannot alone justify suppression of free speech and assembly. Men feared witches and burnt women.

*NTEU,* 513 U.S. at 475, 115 S.Ct. at 1017 (quoting *Whitney v. California,* 274 U.S. 357, 376, 47 S.Ct. 641, 648, 71 L.Ed. 1095, (1927) (Brandeis, J., concurring)). In this case, de-

fendants feared losing control and burnt firefighters.

Therefore, this Court concludes that the suppression of plaintiffs' free speech rights and the harm resulting to the public from the Fire Department rules far outweigh any harm to the government. The benefits the Fire Department rules may provide—including the stanching of media leaks about investigations—are not sufficient to justify this crudely crafted burden on plaintiffs' freedom to engage in expressive activities. These Fire Department rules on their face violate the First Amendment.

### III. *Remedies*

 One proper remedy to an unconstitutional exercise of the police power is a declaration of the invalidity of that action or policy. *See Q.C. Constr. Co., Inc. v. Gallo,* 649 F.Supp. 1331, 1338 (D.R.I.1986) [*hereinafter Q.C. I*]. Where an ordinance is not narrowly drawn, or is "overbroad," the ordinance's very existence may inhibit or chill the free expression of speech protected by the First Amendment. For this reason, an overbroad ordinance may be struck down entirely even though, as applied, it may prohibit some forms of expression which are not constitutionally protected. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973); *Wolf v. City of Aberdeen,* 758 F.Supp. 551, 553 (D.S.D. 1991).

 Injunctive relief is also an appropriate remedy for a constitutionally defective police power regulation. *See, e.g.,* Dan B. Dobbs, *Dobbs Law of Remedies* § 2.9(2) (2d ed.1993); *Q.C. I,* 649 F.Supp. at 1338–39. In issuing permanent injunctive relief, a district court has "broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *Brown v. Trustees of Boston University,* 891 F.2d 337, 361, n. 23 (1st Cir.1989) (quoting *NLRB. v. Express Publishing Co.,* 312 U.S. 426, 435, 61 S.Ct. 693, 699, 85 L.Ed.

930 (1941)). At the same time, an injunction should be narrowly tailored to give only the relief to which the plaintiff is entitled. *See Brown,* 891 F.2d at 361 (citing *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979)).

For the preceding reasons, plaintiffs' motion for summary judgment is granted and defendants' motion for summary judgment is denied. General Order No. 13 and Regulations 23 and 24 are declared void, and defendants are enjoined from enforcing them against any of these plaintiffs or any member of Providence Firefighters Local 799.

Plaintiffs are also entitled to costs and an award of counsel fees under 42 U.S.C. § 1988. Any motion for such costs including counsel fees shall be made within twenty (20) days of this decision. The application for counsel fees must be supported by a detailed, contemporaneous accounting of the time spent by the attorneys on this case. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984).

Counsel for plaintiff shall draft and submit to the Court a proposed form of judgment. It is so Ordered.