USCA1 Opinion

 

 June 23, 1993 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-2389 WILLIAM T. BRODERICK, ET AL., Plaintiffs, Appellees, v. FRANCIS ROACHE, ET AL., Defendants, Appellees. ____________________ ARTHUR MORGAN, JR., Defendant, Appellant. ____________________ ERRATA SHEET Please make the following correction in the opinion in the above listed case released on June 18, 1993: ARTHUR MORGAN, JR., Defendant, Appellant. United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-2389 WILLIAM T. BRODERICK, ET AL., Plaintiffs, Appellees, v. FRANCIS ROACHE, ET AL., Defendants, Appellees. ____________________ ARTHUR MORGAN, JR., Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Torruella and Stahl, Circuit Judges, ______________ and Burns,* District Judge. ______________ ____________________ Walter B. Prince with whom Peckham, Lobel, Casey, Prince & Tye _________________ _____________________________________ was on brief for appellant. James F. Lamond with whom Alan J. McDonald and McDonald, Noonan ________________ _________________ ________________ and Lamond were on brief for appellees William T. Broderick, et al. __________ ____________________ June 18, 1993 ____________________ ____________________ *Of the District of Oregon, sitting by designation STAHL, Circuit Judge. In this appeal, defendant- _____________ appellant Arthur Morgan, Jr. ("Morgan") challenges the district court's ruling that he was not entitled to qualified immunity. Finding no error in the district court's ruling, we affirm. I. I. __ BACKGROUND BACKGROUND __________ On May 12, 1990, plaintiffs-appellees the Boston Police Superior Officers Federation ("Federation") and William Broderick ("Broderick"), an employee of the Boston Police Department ("Department")1 and an official of the Federation,2 initiated this action against Morgan, the Department's Deputy Superintendent in charge of the Internal Affairs Division ("IAD"); the City of Boston ("City"); Francis Roache, the Department's Commissioner; Paul Evans, the Department's Superintendent-in-Chief in charge of the Bureau of Field Services; Robert Conlon, a sergeant detective within the Department's IAD; and Charles Burke, the Department's Deputy Director of the Bureau of Administrative ____________________ 1. Broderick has been employed by the Department since 1969, has been a police officer since 1977, and has been a sergeant since 1986. 2. Broderick served as Federation vice-president from January 1987, through December 31, 1988, and has served as Federation president since January 1, 1989. -2- 2 Services.3 The complaint alleges that defendants have engaged in a series of acts designed to harass Broderick and retaliate against him for exercising his First Amendment rights (1) to speak on matters of public concern; (2) to participate in union activities; and (3) to file actions in court. Plaintiffs proceed pursuant to 42 U.S.C. 1983 and the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws Ann. ch. 12, 11H and I (West 1986).4 At issue in this appeal is Morgan's involvement in four separate incidents wherein Broderick was disciplined, ostensibly for violating Department rules and regulations. Specifically, plaintiffs claim that Morgan, prompted by a desire to harass and retaliate against Broderick, abused the power of his position by developing and bringing charges against Broderick for his role in the four incidents. The particulars of these incidents, along with the implicated ____________________ 3. All defendants other than the City are sued in their individual and official capacities. 4. This case, despite its pretrial status, has an extensive procedural history. The district court has already issued four previous memoranda and orders relative to various pretrial motions brought by the parties. See Broderick v. ___ _________ Roache, 751 F. Supp. 290 (D. Mass. 1990) (inter alia, ______ _____ ____ dismissing plaintiffs' civil RICO claim); Broderick v. City _________ ____ of Boston, 755 F. Supp. 482 (D. Mass. 1991) (inter alia, __________ _____ ____ denying the City's motion to dismiss the Federation); Broderick v. Roache, 767 F. Supp. 20 (D. Mass. 1991) _________ ______ (resolving in Broderick's favor the question of whether certain statements he made were matters of public concern and thus protected speech); Broderick v. Roache, 803 F. Supp. 480 _________ ______ (D. Mass. 1992) (denying the City's motion for summary judgment on plaintiffs' claim against it under the MCRA). -3- 3 factual disputes, are delineated in the district court's thorough memorandum and order and need not be restated at length. See Broderick v. Roache, Civil Action No. 90-11500- ___ _________ ______ MA, slip op. at 3-9 (D. Mass. Oct. 22, 1992) (hereinafter "Broderick V"). Instead, we summarize the incidents as ____________ follows: 1. In early 1989, Morgan received a complaint that Broderick was abusing the "release time" available to him as a Federation officer. "Release time" is time during which elected officials of the Federation are allowed to conduct Federation business during on-duty hours. Broderick asserts that Morgan departed from ordinary procedures in subsequently developing and bringing charges against him and recommending a disciplinary hearing. Among the departures from ordinary procedures alleged by Broderick is that, prior to the hearing, Morgan never afforded Broderick an opportunity to explain what happened and/or to accept a lesser form of discipline in order to avoid the hearing. 2. In April 1989, Broderick received notice that he would be required to undergo a second disciplinary hearing on charges that he had violated Department rules and regulations during an arrest of Kathleen Bean the previous February. Broderick claims, inter alia, that Morgan departed _____ ____ from ordinary procedures in pressuring Bean into filing the charges, disregarding the recommendation of Broderick's commanding officer that the charges be classified as "unfounded" (which Morgan had never done before), and subsequently urging Broderick's commanding officer to approve charges with which he disagreed. 3. In December 1989, Morgan was present at an interrogation of Broderick conducted by Super- intendent Evans. The interrogation concerned certain remarks, critical of the Department, that were attributed to Broderick in an article appearing in the Boston Globe. Broderick essentially contends that Morgan exceeded his authority in attending the interrogation and -4- 4 improperly allowing the interrogation to extend beyond the scope of the Globe article. 4. In May 1990, Broderick received notice that he would be required to undergo a third disciplinary hearing on charges that he had violated Department rules and regulations while arresting Ezekiel Oluh the previous November. Broderick asserts, inter _____ alia, that Morgan departed from ordinary procedures ____ by ensuring that IAD, rather than Broderick's district, conducted the initial investigation into Oluh's complaint, and by becoming personally involved in the investigation. During the course of the IAD investigation, Oluh filed a second complaint against Broderick, asserting that Broderick had threatened him during the course of the criminal trial which followed the initial arrest. Broderick claims that Morgan departed from ordinary procedures by again disregarding the recommendation of Broderick's commanding officer that the charges in this second complaint be classified as "unfounded." He also contends that Morgan used this second set of charges to retaliate against him for seeking an injunction in a lawsuit brought by the Federation against the Department over civil service promotions. On March 4, 1992, Morgan filed a motion for summary judgment, arguing that the doctrine of qualified immunity shielded him from liability. As we have noted, the district court, by memorandum and order dated October 22, 1992, rejected that argument. In so doing, the court found genuine issues of material fact regarding Morgan's motive in the actions he took against Broderick, and that the question of qualified immunity could not, therefore, properly be resolved by pretrial motion. See Caro v. Aponte-Roque, 878 F.2d 1, 2- ___ ____ ____________ 4 (1st Cir. 1989) (genuine issues of material fact on the question of defendant's motive for taking adverse personnel action against plaintiff made proceeding to trial on question -5- 5 of qualified immunity appropriate).5 It is from this ruling that Morgan now appeals. II. II. ___ DISCUSSION DISCUSSION __________ Before discussing the merits of Morgan's appeal, we pause to note that which we need not resolve. In moving for summary judgment before the district court, Morgan neither challenged the court's ruling that Broderick's conduct is constitutionally protected nor contended that the rights at issue were not "clearly established," see Harlow v. ___ ______ Fitzgerald, 457 U.S. 800, 818 (1982), at the time the __________ relevant incidents occurred. See, e.g., Rodriguez-Pinto v. ___ ____ _______________ Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (awarding ______________ defendant qualified immunity from damage claim because the implicated constitutional right was not clearly established at the time of the complained of acts). Moreover, Morgan __ ___ ____ expressly conceded to the district court that he could "be presumed to know that it was unlawful to retaliate against ____________________ 5. The court also has found, and the parties apparently agree, that this is a "mixed motive" case governed by Mount _____ Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 _____________________________________ _____ (1977). Under the Mount Healthy framework, Broderick bears _____________ the initial burden of proving that his conduct was constitutionally protected and that it was a "substantial" or "motivating" factor for the complained of adverse actions taken by defendants. See id. at 287. If Broderick meets ___ ___ this burden, defendants must then prove "by a preponderance of the evidence" that they would have acted in the same way towards Broderick "even in the absence of the protected conduct." Id. ___ -6- 6 Broderick for Broderick's First Amendment protected conduct[.]" To the extent, therefore, that Morgan now is attempting to argue otherwise,6 he is precluded from so doing. See, e.g., Dedham Water v. Cumberland Farms Dairy, ___ ____ ____________ ________________________ Inc., 972 F.2d 453, 459 (1st Cir. 1992) ("It is hornbook law ____ that theories not raised squarely in the district court cannot be surfaced for the first time on appeal.") (quoting McCoy v. Massachusetts Inst. of Technology, 950 F.2d 13, 22 _____ __________________________________ (1st Cir. 1991), cert. denied, 112 S. Ct. 1939 (1992)); see _____ ______ ___ also Buenrostro v. Collazo, 973 F.2d 39, 44 (1st Cir. 1992) ____ __________ _______ (refusing to allow appellants to assert on appeal a different basis for a qualified immunity defense than that argued to the district court). When Morgan's brief is stripped of this procedurally defaulted chaff, only three arguments, the first two of which are interrelated, remain: (1) that the question of a defendant's intent/motive is immaterial to a properly ____________________ 6. Although it is not entirely clear, Morgan, citing, inter _____ alia, Busby v. City of Orlando, 931 F.2d 764, 774-75 (11th ____ _____ ________________ Cir. 1991) (the special disciplinary concerns of quasi- military organizations like police departments should be taken into account when evaluating the reasonableness of police officials' actions in enforcing regulations that delay an employee's access to public forum), does seem to be challenging the district court's determinations that Broderick's conduct is protected by the First Amendment and that the rights in question were clearly established at the time the relevant incidents occurred. Similarly, Morgan argues that the circumstances of this case "are sufficiently different from other cases in this Circuit involving First Amendment violations that Morgan could not have known his actions may have been considered unlawful." -7- 7 conducted qualified immunity analysis; (2) that, as a matter of law, Morgan's actions in developing and bringing the charges against Broderick, absent any consideration of the issue of his intent/motive in so doing, were objectively reasonable, see Anderson v. Creighton, 483 U.S. 635, 639 ___ ________ _________ (1987), in light of the information he possessed at the times he acted; and (3) that there are no genuine issues of material fact as to whether Morgan's intent/motive in developing and bringing the charges against Broderick was retaliatory. We discuss each in turn. A. Intent and Qualified Immunity A. Intent and Qualified Immunity _________________________________ Morgan's first argument, that the question of his intent is immaterial to the qualified immunity analysis, is premised upon a broad reading of certain language in Harlow. ______ Concerned that too many insubstantial civil rights claims were proceeding to trial and reacting particularly to the "substantial costs attend[ant to] the litigation of the subjective good faith of government officials[,]" see id., ___ ___ 457 U.S. at 815-17, the Harlow Court overruled previous ______ contrary authority7 and jettisoned the "subjective" element of the qualified immunity defense, stating: ____________________ 7. Prior to Harlow, a court conducting a qualified immunity ______ inquiry had to determine whether the defendant official asserting a qualified immunity defense "knew or should have known" both of the right at issue and whether his/her conduct violated the constitutional norm. See, e.g., Procunier v. ___ ____ _________ Navarette, 434 U.S. 555, 562 (1978). _________ -8- 8 [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Id. at 817-18. In subsequent cases, the Court has reaffirmed ___ that the "reasonableness" of the defendant official's actions should be determined according to an objective, rather than a subjective, standard. See, e.g., Anderson, 483 U.S. at 645 ___ ____ ________ ("Harlow . . . replac[ed] the inquiry into subjective malice ______ so frequently required at common law with an objective inquiry into the legal reasonableness of the official action."); Malley v. Briggs, 475 U.S. 335, 341 (1986) ("Under ______ ______ the Harlow standard . . . an allegation of malice is not ______ sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."). Morgan argues that such language not only precludes us from inquiring into whether he himself knew whether the First Amendment rights at issue were clearly established at the time in question, but also prohibits us from examining the actual reasons for his actions. In other words, Morgan would have us read Harlow in such a way as to immunize him ______ from liability even if he did intend to retaliate against Broderick for engaging in protected conduct. -9- 9 The short answer to Morgan's contention is that, in a recent decision not cited by any of the parties, we rejected this very argument. See Feliciano-Angulo v. Rivera- ___ ________________ _______ Cruz, 858 F.2d 40, 45-47 (1st Cir. 1988). To the extent that ____ Morgan implicitly is inviting us to revisit our ruling in Feliciano-Angulo, we decline. It is settled that, "[i]n a ________________ multi-panel circuit, newly constituted panels, generally speaking, are bound by prior panel decisions on point." Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth., ____________________ ____________________________________ No. 91-1602, slip op. at 6 n.3 (1st Cir. May 3, 1993). So it is here. Moreover, we continue to believe that our ruling in Feliciano-Angulo is sounder than the interpretation of Harlow ________________ ______ urged by Morgan. Although we see no reason to engage in recapitulation here, we again note that the adoption of Morgan's argument "`would insulate officials from liability in all cases in which the substantive prescription makes the official's state of mind an essential component of the alleged constitutional violation.'" Feliciano-Angulo, 858 ________________ F.2d at 46 (quoting Martin v. District of Columbia Metro. ______ _____________________________ Police Dept., 812 F.2d 1425, 1433 (D.C. Cir.), en banc order _____________ __ ____ _____ vacated and Section IV and dissenting opinion reinstated, 824 _______ ___ __________ ___ __________ _______ __________ F.2d 1240 (D.C. Cir. 1987)). For the reasons set forth in Feliciano-Angulo, we think it clear that the Supreme Court ________________ intended no such result. See id. at 46-47. Accordingly, we ___ ___ -10- 10 reject Morgan's argument that the district court erred in taking into consideration his intent while conducting its qualified immunity analysis. B. The Objective Reasonableness of Morgan's Actions B. The Objective Reasonableness of Morgan's Actions ____________________________________________________ Morgan's second argument, that he is entitled to qualified immunity because his actions in developing and bringing the charges against Broderick, absent any consideration of his intent/motive in so doing, were objectively reasonable, falls with our rejection of its condition precedent. Simply put, the objective reasonableness of Morgan's actions absent any consideration of his intent is irrelevant.8 If Broderick can show that an intent to retaliate against him for engaging in protected conduct was a "substantial" or "motivating" factor in Morgan's decision to act as he did, he has met his burden as articulated in Mount Healthy. See supra note 5. Of course, _____________ ___ _____ Morgan may still prevail in the face of such a showing if he can prove, by a preponderance of the evidence, that he would have taken the actions he did even if Broderick had not engaged in protected conduct. Id. Such argument is, ___ ____________________ 8. We note that whether or not a disputed action violates clearly established law often depends on the intent with which it was performed. Auriemma v. Rice, 910 F.2d 1449, ________ ____ 1453 (7th Cir. 1990) (citing Halperin v. Kissinger, 807 F.2d ________ _________ 180, 184 (D.C. Cir. 1986) (Scalia, J.)), cert. denied, 111 S. _____ ______ Ct. 2796 (1991). -11- 11 however, for the factfinder and has no bearing upon our qualified immunity analysis. C. Genuine Issues of Material Fact C. Genuine Issues of Material Fact ___________________________________ Finally, Morgan contends that the district court erred in finding that genuine issues of material fact on the question of his intent/motive precluded the entry of judgment in his favor. However, our review of the record, conducted in the light most favorable to Broderick, see Cookish v. ___ _______ Powell, 945 F.2d 441, 443 (1st Cir. 1991) (in examining ______ whether the district court's denial of a summary judgment motion based upon qualified immunity is proper, we employ normal summary judgment principles and examine the record in the manner most hospitable to the party opposing the motion), persuades us that the court did not so err. Again, we note that the district court's memorandum and order thoroughly sets forth the genuine and material factual disputes relevant to the incidents at issue. See Broderick V, slip op. at 3-9, ___ ___________ 12-13. Therefore, we believe it sufficient to state in summary fashion our agreement with the court that, at a minimum, Broderick's supported allegations that Morgan (1) failed to offer Broderick an opportunity to accept a lesser form of discipline in the Time Release incident in order to avoid a hearing thereon; (2) rejected the recommendations of Broderick's commanding officer in the Bean and Oluh incidents; and (3) became unusually involved in the -12- 12 investigation of the first Oluh complaint, are sufficient to create a genuine and material factual issue as to whether Morgan was motivated by a desire to retaliate against Broderick for exercising his First Amendment rights. See ___ Mount Healthy, 429 U.S. at 287.9 Accordingly, we share the _____________ district court's conclusion that the question of Morgan's qualified immunity cannot be resolved at the summary judgment stage.10 Morgan remains free, of course, to press his qualified immunity defense at a later point in the proceedings. III. III. ____ CONCLUSION CONCLUSION __________ Because the district court correctly ruled that Morgan's entitlement to qualified immunity cannot be decided prior to trial, we affirm its denial of Morgan's motion for summary judgment. Affirmed. Costs to appellees. Affirmed. Costs to appellees. ____________________ 9. In so ruling, we are mindful that "[i]n cases where . . . the state of mind of one of the parties is crucial to the outcome of the case, resort to summary judgment is vested with more than the usual difficulty." Stepanischen v. ____________ Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. ________________________________ 1983). 10. Morgan also argues that, because he is entitled to qualified immunity from plaintiffs' First Amendment 1983 claim, he should be granted summary judgment on plaintiffs' MCRA and civil conspiracy claims. Having rejected the premise upon which these arguments rest, we are compelled to reject their conclusions as well. -13- 13