Tracey **HENRY**, Plaintiff,

v.

**STATE FARM INSURANCE CO.**, Defendant.

Civ. A. No. 91–2594.

United States District Court,
E.D. Pennsylvania.

March 24, 1992.

Mark S. Rosenberg, Dranoff–Perlstein Associates, Philadelphia, Pa., for plaintiff.

Anthony J. Bilotti, Duane, Morris & Heckscher, Philadelphia, Pa., for State Farm Mut. Auto Ins. Co.

## MEMORANDUM AND ORDER

GAWTHROP, District Judge.

This consumer protection case turns on the issue of statutory preemption of common-law claims and whether Pennsylvania's recently adopted quasi-administrative mechanism for settling insurance disputes displaces plaintiff's Seventh Amendment right to trial by jury.

Plaintiff, in this diversity action, *Erie*-bound to Pennsylvania, was injured in an car accident on March 6, 1990 and is suing for medical and wage-loss benefits, alleging that defendant has acted deceitfully and in bad faith by refusing to pay her the benefits she claims are due under her State Farm Automobile Insurance Policy. Defendants contend that these actions have been preempted by the statutory scheme of the Unfair Insurance Practices Act, and therefore, that the plaintiff's action should be dismissed.

Plaintiff seeks payment of benefits and damages, under the insurance contract, for bad faith dealing under 42 Pa.C.S. § 8371, for unfair and deceptive practices under the Unfair Insurance Practices Act, 40 P.S. § 1171.5 (UIPA), Act of July 22, 1974, P.L. 589, No. 205, and the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–3 (CPL), Act of July 1, 1937, P.L. 2672, §§ 1–7, as amended, Act of Nov. 24, 1976, P.L. 1166, No. 260, § 1, and for compensatory and punitive damages at common law and under these statutory consumer protection acts. Defendant has moved under Fed.R.Civ.P. 12(b)(6) to dismiss all but the contract claim, which it asks to be amended to include only medical bills for treatment rendered before April 15, 1990.

### Discussion

■ For purposes of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim

upon which relief can be granted, the court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to plaintiff. *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3rd Cir.1985). Unless the plaintiff can prove no set of facts which would entitle her to relief, the complaint may not be dismissed. *Id.* In addition to common-law claims, sounding in tort, the plaintiff brings three statutory claims, which I shall discuss in turn.

1. Unpaid Benefits Under the Insurance Contract

■ Plaintiff seeks payment for medical treatment and lost wages, together with statutory 12% interest and attorney's fees, for benefits which she says State Farm should have paid her under her State Farm insurance policy, under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1797 (PMVFRL). There is no dispute that plaintiff's accident and injuries are covered by the insurance policy. Rather, the dispute centers on what portion, if any, of the medical bills the insurance company must pay under the PMVFRL.

The PMVFRL defines "medical benefits" as "coverage to provide for "reasonable and necessary medical treatment and rehabilitative services." 75 Pa.C.S. § 1712. The act limits the insurance company's reimbursements to the "usual and customary charges" billed for similar treatment. Under the act, a Peer Review Organization evaluates the reasonableness and necessity of the treatment bills and resolves billing disputes among the insurer, the insured, and medical care provider. 75 Pa.C.S. § 1797. Then, the provider bills the insurer directly, and the insurer is obliged to reimburse only the medical expenses considered necessary and reasonable by the Peer Review Organization. *Id.* It is clear that the provider or insured may sue for payment of any medical treatment which the insurer has not challenged before the Peer Review Organization. 75 Pa.C.S. § 1797(b)(4). It is also clear that if the Peer Review Organization decides that the medical treatment is unnecessary, the in-

surer, the provider, or the patient may ask the Peer Review Organization to reconsider. What is not entirely clear, contends the defendant, is whether the insured retains the preexisting right to sue the insurer to make payments to the medical provider.

Here, the insurer did seek review, and the Peer Review Organization determined that none of the medical bills were reimbursable. The insured did not seek reconsideration, however, because until December 1991, the appellant had to pay the $400 reconsideration fee in advance. Because this fee deterred insureds from seeking reconsideration, the Insurance Commission has since December 1991, required the insurer to pay the reconsideration fee. (Pl. Brief in Opposition to Dismissal, at 7). Here, the plaintiff instead sued for relief in state court, which action was removed by defendants to this court, under 28 U.S.C. § 1441 and § 1332.

■ Defendant contends that the statutory scheme preempts plaintiff's common-law claims. The Peer Review scheme became effective as of April 15, 1990, in the midst of plaintiff's treatment. The legislature did not proclaim it to operate retroactively. The right to sue, acknowledged by both parties with regard to the pre-April 15, 1990 bills, existed before the enactment of this statute. Absent clear and manifest expression of legislative intent, the statute may not be construed to be retroactive. 1 Pa.C.S. §§ 1926, 1928(b)(2); *See Coyne v. Allstate,* 771 F.Supp. 673, 675 (E.D.Pa. 1991). Thus, plaintiff's pre-April 15, 1990 claims survive.

Nor did the statutory scheme explicitly extinguish the preexisting right to seek relief from the court. In Pennsylvania, although the rule of strict construction of statutes in derogation to the common law only applies to statutes "enacted finally prior to September 1, 1937," 1 Pa.C.S. § 1928(b)(8), statutes are, nevertheless, "not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions." 1 Pa.C.S. § 1921; *Commonwealth v. Miller,* 469 Pa.

24, 364 A.2d 886, 887 (1976). The preexisting right to sue is well-established. Hence, the conclusion obtains that the statutory scheme does not supplant, but merely supplements, expands, and, perhaps, expedites, the plaintiff's preexisting remedies. In short, plaintiff has the right to sue on all her claims, arising both before and after April 15, 1990.

■ Defendant also contends that the insured has no standing to sue for the insurer's refusal to pay the medical provider for services considered unnecessary by the Peer Review Organization that that is a matter solely between those two entities to which the insured is a stranger. Under Pennsylvania law, a plaintiff must have a substantial interest in the subject matter of the litigation to have standing to bring suit. *See Franklin Tp. v. Com., Dept. of Environmental Resources*, 500 Pa. 1, 452 A.2d 718 (1982). The insured's immediate and substantial interest lies in her continued treatment and professional relationship with her doctor and her hospital. If past medical bills are unpaid, and future payments are uncertain, experience teaches that this can put something of a damper on a doctor's or hospital's willingness to provide treatment, and the Hippocratic zeal to heal tends to wane. The plaintiff's interest in her health and medical care is sufficiently direct and substantial to imbue her with standing to sue.

■ Defendant finally contends that to have standing, under the PMVFRL, to have standing, insureds must first exhaust "administrative" remedies with the Peer Review Organization, to use defendant's characterization. It appears, however, that defendant's resort to this concept of administrative law will not work in this context. Pennsylvania courts have explicitly held that Peer Review Organizations are "nongovernmental private entities" which are "neither a court of record nor an administrative agency." *Pennsylvania Chiropractic Federation v. Foster*, 136 Pa. Cmwlth. 465, 583 A.2d 844, 849–50 (1990). Thus, any requirement to exhaust remedies under the Pennsylvania Administrative Law and Procedure, 2 App.Pa.C.S. § 101, which pertains only to governmental entities, is inapplicable to Peer Review Organization proceedings.

The Third Circuit has underscored the preeminence of the constitutional right to trial by jury in suits at law, holding that the trial judge is bound by the jury's findings on concurrent claims for equitable relief. *See Roebuck v. Drexel University*, 852 F.2d 715, 737 (3rd Cir.1988). The right to trial by jury in civil matters is an ancient right "that hath been used time out of mind in this nation, and seems to have been co-eval with the first civil government thereof." William Blackstone, 3 *Commentaries*, 349 (1768). As Alexander Hamilton noted in the *Federalist*, No. 83, when addressing "the excellence of trial by jury in civil cases," "[t]he strongest argument in its favour is, that it is a security against corruption." The quasi-public organizational mechanism of the PMVFRL cannot operate to deprive citizens of recourse to the courts and the security against arbitrary action guaranteed by Seventh Amendment right to trial by a jury of one's peers. I cannot say that the Pennsylvania legislature's passage of this alternative-dispute-resolution statute—worthy, justice-expediting purpose that it doubtless has—can serve to wrest away from the people their fundamental, time-honored constitutional right to have this matter adjudicated by the insured's peers, rather than the insurer's hand-picked panel of physician peers. Under our constitution, a jury of one's peers means a fair sampling of a cross-section of the citizenry of the vicinage in which the case is to be tried.

The plaintiff has the right to seek relief in court for the insurer's refusal to pay for her medical treatment and other benefits, regardless of whether these expenses were incurred before or after the April 15, 1990 effective date of the PMVFRL. Hence, defendant's motion seeking amendment of plaintiff's first claim must be denied as moot.

2. Punitive Damages under 42 Pa.C.S. § 8371

■ Plaintiff alleges that defendant has dealt with her in bad faith, both in describ-

ing the policy and in refusing to make payments under the policy. Specifically, plaintiff asserts failure to respond to inquiries promptly, failure to conduct reasonable investigations before refusing to pay claims, refusal to pursue timely settlement of disputed claims, and failure to provide adequate explanation for refusal of coverage. Under 42 Pa.C.S. § 8371—Actions on insurance policies, plaintiff can recover both compensatory and punitive damages.[1]

Defendant argues that since this statute was not in force when the contract was formed, nor when the accident took place, it cannot apply to this case. It is true that this statute, enacted on February 7, 1990, became effective 60 days later, approximately three months before the alleged bad-faith conduct giving rise to this suit. As Judge Fullam held in a similar case, construing the same statute, "It is not the underlying insurance contract which gives rise to the plaintiff's claims for punitive damages, etc., but defendant's bad-faith conduct—which allegedly occurred after defendant had full knowledge of the potential penalties." *Dembowski v. Allstate Insurance*, slip. op., 92–CV–43, 1992 WL 57931 (E.D.Pa., March 16, 1992); *See also, Coyne v. Allstate*, 771 F.Supp. 673, 675 (E.D.Pa.1991), where Judge Ludwig held that after the effective date, this statute applied to conduct even though the policy was issued before that date. Viewed in the light most favorable to the plaintiff, as they must be at this juncture, these allegations of bad faith suffice to survive defendant's motion to dismiss.

3. Claims for Unfair Business Practices under 40 P.S. § 1171.5 and 73 P.S. § 201–3

■ The plaintiff alleges that the defendant's misrepresentations and failure to pay benefits constitute unfair business practices in violation of the Unfair Insurance Practices Act, 40 P.S. § 1171.1 *et seq.*, and the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.* This is an area of consumer protection law that has evolved rapidly in recent years. Although the Supreme Court of Pennsylvania in 1983 declined to create a private cause of action for bad faith under the Unfair Insurance Practices Act, to supplement that act's administrative oversight of the industry, *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981), the court's closed doors have been legislatively jarred open by the aforesaid 42 Pa.C.S. § 8371, establishing the right to recover compensatory and punitive damages for an insurer's bad faith conduct.

In a parallel vein, Pennsylvania courts have concluded that private causes of action for fraud and deceit, may be maintained under pre-existing common law and under the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–3. *See, e.g., Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427 (1986); *Hardy v. Pennock Insurance Agency, Inc.*, 365 Pa.Super. 206, 529 A.2d 471 (1987); *Dezaiffe v. State Farm Fire & Casualty Co.*, 42 Pa.D. & C.3d 133 (Clearfield Co.1984). Thus, as a matter of law, these private, common law actions continue to survive for fraud and deceit, even though they are not directly based on the UIPA, and for these torts, plaintiffs may claim compensatory, as well as punitive, damages, if the tortfeasor has acted wilfully or maliciously. *See* 73 P.S. § 201–8—Civil Penalties, and § 201–9.2 Private Actions (authorizing the court, at its discretion, to award treble damages).

Defendant, relying on *D'Ambrosio, supra*, and *Layton v. Liberty Mutual Fire Ins. Co.*, 577 F.Supp. 1 (E.D.Pa.1983), *aff'd* 725 F.2d 668 (3rd Cir.1983), and their progeny, contends that the UIPA preempts all private actions in tort, leaving the plaintiff solely with administrative and contract

---

1. This statute reads in pertinent part:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

remedies. Those cases indeed so hold. However, both cases have been superseded by statute. *See, Liberty Mut. Ins. Co. v. Paper Mfg. Co.*, 753 F.Supp. 156 (E.D.Pa. 1990); and *Boland v. Nationwide Mut. Ins. Co.*, 9 Pa.D. & C.4th 27 (Blair Co.1991). Judge Pollak, the District Judge in *Layton*, has since revisited the issue of an insurer's fraudulent or deceitful conduct and found that a private cause of action survives under the Consumer Protection Law. *Thomson v. Allstate Insurance Co.*, No. 87–2666, slip op., 1988 WL 3857 (E.D.Pa.1988). Judge Waldman has similarly held that a such a private cause of action exists:

> This court does not read *D'Ambrosio* as precluding CPL and all other pre-UIPA causes of action from fraud that happen to arise in the insurance context ... The Superior Court has continued to adhere to this view, first expressed in *Pekular*, despite five subsequent contrary district court opinions ... Beyond merely predicting what the State Supreme Court would hold ... One must seriously question whether that Court silently would let stand for almost five years a line of Superior Court cases recognizing and requiring litigation of causes of action in direct contravention of something the high court did hold.

*Chamberlain v. State Farm Mutual Auto. Ins. Co.*, 1991 WL 108688, at 2, LEXIS 8165, at 4 (E.D.Pa.1991).

With these decisions I agree. Having established that the cause of action exists, the court must still determine whether plaintiff's allegations are sufficient to withstand a motion to dismiss. In her complaint, plaintiff enumerates a series of refusals and delays in dealing with her requests for benefits. (Complaint ¶ 20 a–g). These eight items, averring a variety of misrepresentations about coverage and misapplication of standards for benefits could support this prong of plaintiff's pleadings. At this juncture, that alleged pattern of conduct provides sufficient basis for plaintiff's claims to withstand a motion to dismiss.