**Paul GROS, Plaintiff,**

v.

**The PORT WASHINGTON POLICE DISTRICT, Commissioners Stephen Zaccherio, Frank Scobbo, Defendants.**

**No. CV 95–0168 (ADS).**

United States District Court,
E.D. New York.

Oct. 26, 1996.

Leeds & Morelli by Lenard Leeds, Eileen Campbell, Carle Place, NY, for Plaintiff.

Jaspan, Schlessinger, Silverman & Hoffman L.L.P. by Stanley Camhi, James Burke, Garden City, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

Presently before the Court is the renewed motion of the defendants, the Port Washington Police District and two of its commissioners, Stephen Zaccherio ("Zaccherio") and Frank Scobbo ("Scobbo") ("Scobbo" collectively the "defendants" or "Police District"), for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) and/or a new trial including remittitur pursuant to Fed.R.Civ.P. 59. According to the defendants, after a jury trial, the plaintiff, Paul Gros ("Gros" or the "plaintiff"), has failed to establish that his First Amendment rights to free speech and free association have been violated. As a result, the defendants contend that they are entitled to judgment as a matter of law. In the alternative, the defendants seek a new trial or a remittitur of the damages awarded. Gros opposes the motion, arguing that the verdict should be upheld and that he entitled to the full amount of the damage award.

In addition, the plaintiff cross moves for attorneys' fees as a prevailing party. The defendants also move for attorneys' fees related to the time expended at the trial in the event that their motions for judgment as a matter of law or for a new trial are granted.

## I. *Background*

The plaintiff, Paul Gros, is a police sergeant in the Port Washington Police District. From the 1980's until the present, Gros has consistently remained active in the affairs of the Policemen's Benevolent Association ("PBA"). In 1985 he was appointed PBA vice president and served in that capacity until 1986 when he was elected president. The plaintiff served as president until 1990 when he was appointed a PBA trustee. In 1994, Gros was reelected president, which is the office he held at the time of the trial. According to the plaintiff, because of his participation in PBA affairs, he was subject to "a continual barrage of harassing and discriminatory treatment by the defendants." For example, Gros contends that as the result of his union activities, his promotion to the rank of sergeant was delayed for several years, that he was denied assignments he would have otherwise been given, and that he was denied job-related training, all in violation of his First Amendment rights.

A jury trial was held on June 19, 20, 24, 25, 26, 27, and July 1 and 2, 1996. Prior to the jury charge, the Court, ruling in part on the defendants' motion for judgment as a matter of law, recognized that in order for Gros to maintain his First Amendment claims, he must establish that the speech or association at issue touched upon matters of public concern. *See Gros v. Port Washington Police Dist.,* 932 F.Supp. 63, 66 (E.D.N.Y.1996) (holding that as a matter of law, to establish a claim for violation of plaintiff's First Amendment free association rights, Gros must show that the association, similar to the speech, involved a matter of public concern). Familiarity with this opinion, as well as prior proceedings before this Court is presumed. Assessing the evidence based on the representations of counsel, this Court's informal trial notes, and without the aid of the trial transcript, the Court instructed that the jury could find that Gros had spoken out on the following matters of public concern if the plaintiff could prove such events by a preponderance of the evidence:

1. That the plaintiff spoke at meetings with the police commissioners in 1989, 1990, 1991, 1992, 1993 and 1994 to the effect that there was a shortage of supervisory personnel, including sergeants, in the Port Washington Police District;

2. That in November 1993, Gros spoke out publicly about alleged criminal activities on the part of Commissioner Zaccherio; and

3. Also in November 1993, the plaintiff spoke to the District Attorney of Nassau County concerning alleged criminal activities on the part of Commissioner Zaccherio.

*See* Trial Transcript ("Tr.") at 1417–18 (jury charge as to the only evidence of speech on matters of public concern).

The Court further instructed the jury that if Gros had established the foregoing speech of public concern, the jury could determine that the plaintiff was harassed in violation of his constitutional rights if he was able to prove the following facts by a preponderance of the evidence:

1. In 1990, he was not paid overtime for a trip he took to Washington, D.C.;

2. In 1992, after he successfully investigated a serious bank crime, his award was downgraded;

3. In 1992, he received radar training instead of a narcotics assignment;

4. As a result of the Flower Hill Hose Co. meeting on February 2, 1993, he was investigated;

5. In May 1993, he was not paid overtime when he testified at a Human Rights Hearing for another officer;

6. He was not paid overtime when he testified at a PERB hearing in November 1993;

7. Also in November 1993, Gros was directed to see a police surgeon when there was nothing wrong with him;

8. In December 1993, charges were served on Gros at home in the presence of his family because he spoke out against Commissioner Zaccherio alleging possible criminal activity.

Tr. at 1408.

Based on this evidence, the jury returned a verdict in favor of the plaintiff finding that the defendants violated his constitutional rights. As a result, the plaintiff was awarded $25,000 in back pay, $500,000 for emotional distress and $80,000 in punitive damages each, against Commissioners Scobbo and Zaccherio.

The defendants challenge the jury verdict and damages award on several grounds. Initially, the defendants contend that although the Court instructed the jury that Gros had engaged in protected speech between 1989 and 1994 regarding a shortage of supervisory personnel, a review of the trial transcript reveals that no such evidence was ever presented. According to the defendants, Gros spoke to the Commissioners only about his own promotion during these periods, which does not constitute a matter of public concern, and therefore is not shielded by the First Amendment. With respect to the second and third instances of speech regarding Commissioner Zaccherio's alleged illegal conduct, the defendants argue that the resulting harassment is "de minimis," and therefore does not rise to the level of a constitutional violation. Finally, with respect to the alleged harassment, the Police District contends that Gros failed to establish that speech was a "substantial" or "motivating" factor for the retaliation, as required in order to state a constitutional claim.

In addition to their substantive attacks on the plaintiff's free speech claims, the defendants challenge the verdict on a number of other grounds. First, the Police District contends that the back pay award cannot be sustained because the plaintiff's promotion claim is barred by the three-year statute of limitations. In the alternative, the defendant posits that even if the back pay award is not time barred, it must nevertheless be reduced because it is not supported by the evidence.

Second, the individual defendants, Commissioners Zaccherio and Scobbo, contend that even if the plaintiff may have otherwise established his First Amendment claims, they are entitled to judgment as a matter of law under the doctrine of qualified immunity. According to Zaccherio and Scobbo, any action they were found to have taken against Gros was not in violation of a clearly established constitutional right. As a result, they contend that they should be insulated against civil suit.

Third, the Police District contends that the $500,000 award for emotional damages should be reduced. According to the defendants, such a large award should shock the conscience of the Court and constitutes a denial of justice.

Fourth, the defendants argue that the award of punitive damages was inappropriate in this case as such an award is not support by the evidence. In the alternative, the Police District contends that even if punitive damages are appropriate, they should be reduced.

Finally, the defendants maintain that they were denied a fair jury trial because of the composition of the panel. Based on the fact that a number of the jurors were from New York City rather than the counties of Nassau and Suffolk, closer to where the events involved took place, the Police district contends that its Seventh Amendment right to a jury of its peers was violated.

Needless to say, the plaintiff opposes the defendants' motion and disputes all of the arguments advanced. Gros argues that the jury verdict is proper and is entitled to deference by the Court. Accordingly, the plaintiff contends that the verdict and the award of damages should stand.

## II. *Discussion*

### A. *Standard of Review*

Pursuant to Fed.R.Civ.P. 50(b), a renewed judgment for a matter of law may be made "at the close of all the evidence" and after the verdict. A motion for judgment of a matter of law may be granted where "there is no legally sufficient evidentiary basis for a reasonable jury to find [in favor of the nonmoving] party." Fed.R.Civ.P. 50(a).

When ruling on a motion for judgment as a matter of law, the court must " 'consider the evidence in the light most favorable to the [non moving party] and ... give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence.' " *Concerned Residents for the Environment v. Southview Farm,* 34 F.3d 114, 117 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995), quoting, *Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 367 (2d Cir.1988). Accordingly, when ruling on a motion brought pursuant to Rule 50, the court may not rule on the credibility of the witnesses or the weight of the evidence. *Caruso v. Forslund,* 47 F.3d 27, 32 (2d Cir.1995). In order to grant a motion for judgment as a matter of law, there must be a " 'complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men [and women] could not arrive at a verdict against [it].' " *Concerned Residents,* 34 F.3d at 117, quoting, *Song v. Ives Lab., Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992); *Mattivi v. South African Marine Corp. "Huguenot",* 618 F.2d 163, 168 (2d Cir.1980).

 In order to grant a new trial, the court must find that the verdict is "seriously erroneous" or constitutes a "miscarriage of justice." *Smith,* 861 F.2d at 370; *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 691 (2d Cir.1983). To grant a motion for a remittitur, the Court must find that the damage award was so excessive as to "shock the judicial conscience and constitute a denial of justice." *Walz v. Town of Smithtown,* 46 F.3d 162, 170 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995); *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir. 1990).

### B. *The Police District's motion*

As stated above, the defendants move for judgment as a matter of law, or alternatively, for a new trial or a remittitur on a variety of grounds. For the sake of clarity, the Court will address each of these arguments in turn.

### 1. *Failure establish a First Amendment claim*

Initially, the Police District contends that Gros failed to prove a violation of his free speech or free association rights. To consider a cause of action under the First Amendment, the Supreme Court has set forth a multi-step analysis. In *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court established that a public employee's free speech claims should be evaluated by balancing the right of the worker to express his or her views against the right of the employer to maintain workplace efficiency as a justification for retaliatory conduct. *Id.* at 568, 88 S.Ct. at 1734–35. As stated in this Court's earlier opinion, this balancing test was further refined in *Mount Healthy City School District v. Doyle,* 429 U.S. 274, 283–87, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977), which provides a three step process enabling the plaintiff to prove his case: (1) the plaintiff must show that the speech was constitutionally protected; (2) the plaintiff must demonstrate that the protected activity was a "substantial" or "motivating" factor for the retaliatory conduct; and (3) if these two criteria are met then the defendants must show that they would have reached the same decision even if the plaintiff had not engage in protected activity. In *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the court elaborated on these standards by recognizing that not all speech by a public employee is entitled to constitutional protection, stating that:

> When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior....
>
> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.

*Id.* at 147–48, 103 S.Ct. at 1690.

 This inquiry constitutes a question of law to be decided by the Court, not one of

fact for the jury. *Id.* Accordingly, when a dispute arises relating to the First Amendment rights of a public employee, the courts must balance the employee's rights to comment on matters of public concern with the government's interest as an employer, to provide public services effectively and efficiently. *See Waters v. Churchill,* 511 U.S. 661, ——, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994); *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734; *Vasbinder v. Ambach,* 926 F.2d 1333, 1339 (2d Cir.1991). As a result, not every matter that transpires in a government office or pertains to the functioning of a public agency is a matter of "public concern." However, as the Second Circuit has observed, the Supreme Court has declined to establish a general standard against which such statements may be judged, recognizing that there is a great variety of fact situations in which disputes regarding allegedly protected speech may arise. *Blum v. Schlegel,* 18 F.3d 1005, 1011 (2d Cir.1994).

### a. *Speaking out at meetings with Commissioners between 1989 and 1994*

Initially the defendants challenge the Court's decision to charge the jury that it could find that the plaintiff had spoken out about matters of public concern between 1989 and 1994 when he spoke to the commissioners regarding understaffing at the supervisory level within the Police District. The Police District makes two arguments in this respect. First, the defendants maintain that the charge was erroneous because:

> a review of the trial testimony confirms that there is *NO* evidence that Mr. Gros spoke out at public meetings, or elsewhere, with the commissioners between 1989 and 1994 regarding shortages of supervisory personnel or the impact that shortages would have on the ability of the Police District to provide services to the community it serves.

Def. Mem. Law at 6. According to the Police District, the only matters Gros discussed with the defendants involved his own promotion, not a matter of public concern within the meaning of the First Amendment. Alternatively, the defendants maintain that even if Gros had raised the issue of understaffing to the defendants, such speech is nevertheless insufficient to warrant protection under the First Amendment. As a result, to the extent that any of the alleged "harassment" presented to the jury, as set forth above, occurred prior to November 1993, and served as the basis for the verdict, the verdict should be set aside.

In the seminal case of *Connick v. Myers,* a public employee, Myers, had circulated a questionnaire soliciting her coworkers' opinions regarding her employer's reassignment and transfer policy. *Connick,* 461 U.S. at 141, 103 S.Ct. at 1686–87. According to the plaintiff, she was subsequently terminated in retaliation for circulating the questions. Reviewing the questionnaire, the Supreme Court determined that all but one question failed to address matters of public concern and therefore were not entitled to constitutional protection. Rather, they pertained to matters of personal interest such as "the confidence and trust that Myers' co-workers possess in various supervisors, the level of office morale, and the need for grievance committee as mere extensions of Myers' dispute over her transfer...." *Id.* at 148, 103 S.Ct. at 1690.

■ Consistent with *Connick,* other courts have concluded "that "an employee's speech, activity or association, merely because it is union-related, does not touch on a matter of public concern as a matter of law." *See Boals v. Gray,* 775 F.2d 686, 693 (6th Cir.1985) (where employee received additional two-day suspension because he asked to have a union representative present, that statement did not touch upon a matter of public concern), citing, *American Postal Workers Union v. United States Postal Serv.,* 598 F.Supp. 564, 568–69 (D.D.C.1984) (postal worker's column in union news letter discussing strategies for increasing union membership and right-to-work movement distinguished from speech in *Connick* ). Accordingly, a "challenge to [a supervisor's] authority, involving a matter of internal discipline" constitutes nothing more than a matter of concern to the employee "alone." *Id.* at 696; *cf. Griffin v. Thomas,* 929 F.2d 1210, 1214–15 (7th Cir.1991) (teacher's filing

union grievance regarding her performance rating did not involve a matter of public concern); *Havekost v. United States Dep't of Navy*, 925 F.2d 316, 318 (9th Cir.1991) (holding complaint about dress code and staffing policies was nothing more than a "workplace grievance" not entitled to constitutional protection); *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir.1985) (when the plaintiff interviewed for job as police chief, "[w]hether [the plaintiff] was merely a conduit for the concerns of another, or whether his interest was in securing the job as chief of police, his aim … was something only of personal interest" and therefore not protected by the First Amendment) (internal quotation omitted); *Knapp v. Whitaker*, 757 F.2d 827, 840 (7th Cir.), *cert. denied*, 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985) (teacher's complaints about classroom assignments and content of evaluation are not matters of public concern).

In *McEvoy v. Shoemaker*, 882 F.2d 463 (10th Cir.1989), the plaintiff, a retired police lieutenant, alleged that he was denied a promotion to the rank of captain in violation of his First Amendment rights as the result of a letter he wrote to the city council complaining of the "mismanagement of command level personnel." *Id.* at 465. Reviewing the letter, the Court of Appeals for the Tenth Circuit determined that the plaintiffs complaints essentially entailed gripes that " 'internal politicing [sic], favoritism, and clique deprivations,' " governed " 'transfer[s], training utilization, and personnel relationships.' " *Id.* at 466. In addition, McEvoy complained of "the department's failure to promote him from his position as relief commander despite qualifications." *Id.* In rejecting the plaintiff's claims, the court concluded that the plaintiff's speech was a matter of private, rather than public concern. *Id.* at 466–67.

In *Broderick v. Roache*, 751 F.Supp. 290 (D.Mass.1990), the plaintiff, a police officer and president of the local union, sued the Boston Police Department ("BPD") for allegedly retaliating against him because of his open opposition to a number of the department's policies and procedures. *Id.* at 291. Among the alleged protected activities, Broderick claimed that he made several statements to the media critical of the BPD. *Id.*

These statements addressed a variety of "subjects affecting the police department," including employment policies, such as a proposed promotional exam for lieutenants, and the failure to promote him. *Id.* at 291–92. In addressing the defendants' motion to dismiss, the district court recognized that those statements which "relate only to internal departmental employment matters" will not support a section 1983 claim. *Id.* at 293.

> While Broderick has a right to disagree with his employer, belong to a union and use the courts and other dispute resolving forums to further and safeguard his rights, the First Amendment does not afford him special protection as a public employee for these activities. These are essentially private matters, and have been explicitly excluded from the doctrine by the Supreme Court. *See Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. While Broderick's employer may in fact be engaging in conduct designed to discourage his vigorous advocacy of the union, and to weaken the [union] by intimidating one of its most influential spokespersons, Broderick's remedy may be found in the state and federal labor laws specifically designed to prevent employer abuse of power in such labor disputes.

*Id.* at 293; *see also Altman v. Hurst*, 734 F.2d 1240, 1243 (7th Cir., 1984), *cert. denied*, 469 U.S. 982, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984); *Lehpamer v. Troyer*, 601 F.Supp. 1466, 1468–69 (N.D.Ill.1985) (police officer's complaints to employer about poor job evaluations and employer's unwillingness to grant him light-duty assignments for off-duty injury did not constitute matters of public concern, and thus, officer's free speech rights were not infringed by any alleged retaliation with respect to the sergeant's promotional exam or other work assignments).

■ Applying these standards, Gros opposes the defendants motion arguing that, as the Court instructed the jury, he spoke to the Commissioners on matters of public concern in 1989, 1990, 1991, 1992, 1993 and 1994, namely the shortage of sergeants and supervisory personnel. In support of his position, the plaintiff cites to the following testimony:

Mr. Leeds ("Q"):

Now, at the time that Mr. Oettinger was promoted, how many openings were there for sergeant?

Mr. Gros ("A"):

Two.

Q: Did you discuss that with Commissioner Scobbo in your 1991 conversation?

A: Yes, I did.

Q: And what did you say and what did he say?

A: I told him that there were openings in the duty chart and that I couldn't understand why there was a delay in getting me promoted, and he said there was a problem with the other two commissioners because of my union activity and keep my nose clean and become a company man and he would work on getting me promoted.

Q: Now, did you also have a conversation in November of '91 with Chief Donahue?

A: Yes.

Q: And would you tell us the substance of that conversation?

A: I had approached Chief Donahue in November of 1991 asking why I wasn't being promoted and I told him there were openings in the duty chart in patrol and openings in the department [sic] promote supervisors.

Chief Donahue told me at that point if I made any waves and I continued to try and get myself promoted they would remove Lieutenant Phil Cross form his administrative job and place him in the position open in the duty chart. He said it was the Lieutenant's position that was opened.

I say the way our contract reads is that a lieutenant or a sergeant can both fill the same slot. If there's no sergeant or lieutenant's list available in the past, sergeants would be put in place of lieutenants which would mean you could have eight or nine sergeants and when a list became available for a lieutenant, the people on or in those positions would be promoted and adjusted accordingly into the schedule as to the positions.

 * * * * * *

Tr. 89–90.

Q: Do you recall a conversation with Commissioner Zaccherio in or about February of 1992 involving your promotion to sergeant?

A: Yes. I had gone to Commissioner Zaccherio and asked him about being promoted to sergeant. I'm sorry, Commissioner Zaccherio called me up and wanted to speak with me and I had told him, you know, I asked him what was going on with the promotions to sergeant? Commissioner Zaccherio stated to me he was working on getting me promoted and like the other people he said he was having a problem with the other two commissioners because of my union activities. He was trying to get me promoted and commented to me, well, you really don't want to back into uniform anyway.

And I told Commissioner Zaccherio that if I get promoted I would prefer to stay in the detective division but I certainly wouldn't mind being put back into uniform if that is what it takes for me to get promoted and that conversation was very brief. He said he was going to try and see what would be done, to hang in there and wait until December. And I told him I've been through this already with Commissioner Scobbo, I heard this already, he blamed you and you blame everybody.

Q: Do you recall a conversation with Commissioner Scobbo in or about December of 1992 involving your promotion?

A: Yes. Commissioner Scobbo approached me again and I again asked him about promotions and he said that he was working on it, that he still had a problem with the other commissioners, and that he was going to see what he could do about getting me promoted, that there was still a problem with my union activities.

He also told me that Zaccherio was out to get me and that I had to make amends with Commissioner Zaccherio if I wanted to be promoted to sergeant. Tr. 91–92.

Q: By the way, did you have a conversation with Commissioner Costello in or about February of 1992 regarding your union activities?

A: Yes, I did.

Q: Will you tell us what occurred at that time?

A: I requested a meeting in the first week of February with the Board of Commissioners to discuss my training and promotion and I met with Commissioner Costello and Zaccherio, Commissioner Scobbo had left the room. I asked, I brought it to Commissioner Costello's attention I had not been sent for training. There were positions open for promotion and I didn't understand why I wasn't receiving the same training that the new members at the detective unit were getting and why I wasn't being promoted when there were openings.

Commissioner Costello said there had been a problem in the past with my union activities but he would look into correcting things that he didn't feel it was a problem any more and he would try to and straighten everything out for me.

I asked Commissioner Zaccherio at that point if he had any problem with me and my union activities and he said no, at that point.

Tr. 104–05.

After reviewing the testimony relied upon by the plaintiff, as well as the entire trial record, the Court agrees with the defendants, and now finds that there was *no evidence whatsoever* that the plaintiff spoke out on matters of public concern to the Commissioners regarding staffing shortages (and the results of such shortages) in 1989, 1990, 1991, 1992, 1993 or 1994. Rather, as the above testimony indicates, and the rest of the record makes clear, any conversations that Gros had regarding promotions during this period related only to his own *personal* desire to be

promoted to the rank of sergeant, which event eventually occurred in 1994.

The plaintiff seems to recognize this deficiency in the evidence by arguing that his speech must be examined in light of testimony of other witnesses, such as Sergeant Rabena and Captain Miniter, who testified that there were staffing shortages, or related testimony that members of the public at large were concerned about staffing. Assuming that Gros's interpretation of this testimony is correct, this evidence would not support Gros's speech cause of action. This case concerns alleged retaliation against the plaintiff as the result of *his* exercise of his First Amendment rights.

Further, Gros seeks to have the Court consider the hearing and subsequent decision of the Public Employment Relations Board in 1993 and 1994, respectively, as support that Gros spoke out on matters of public concern. Citing no authority, the plaintiff reasons that although the Board's decision was excluded from evidence under Fed.R.Evid. 403 because of potential unfair prejudice, the Court can consider the PERB decision in the determination of these motions. The Court disagrees. The defendants' motion addresses the sufficiency of the evidence actually adduced at trial. As a result, the Court declines to review the PERB decision when considering the Police District's motion.

In reaching this conclusion, the Court recognizes that in certain circumstances, a PBA president speaking to the commissioners regarding staffing issues and shortages could constitute a matter of public concern. For example, if Gros had approached one, or all of the commissioners, and recommended that promotions be made because the police department is suffering from a lack of organization which in turns threatens public safety, this could constitute speech regarding public concern.

■ However, the facts here reveal a different scenario. Adapting the words of Justice Holmes, then a member of the Supreme Judicial Court of Massachusetts, over a century ago, a policeman "may have constitutional right to talk politics, but he has no constitutional right to be [promoted]."

*McAuliffe v. Mayor of New Bedford,* 155 Mass. 216, 220, 29 N.E. 517, 517 (1892), cited in, *McEvoy,* 882 F.2d at 464 (holding that police officer's speech regarding the department's failure to promote him addresses a matter of private, not public, concern). Consistent with Justice Holmes's statement, the plaintiff's testimony regarding his failure to be promoted prior to 1994 constitutes speech on a matter of private concern.

As a result, the Court finds that its jury instructions were erroneous in two respects. First, the jury should not have been instructed that it could find that Gros had made constitutionally protected statements regarding supervisory staffing in 1989, 1990, 1991, 1992, 1993 and 1994. There is no such evidence in the record. Second, because this instruction was the only one relating to the period prior to November 1993, the jury also should not have been instructed that they could find a violation of the plaintiff's First Amendment rights if they determined that the defendants retaliated against him by: (1) failing to pay him overtime for his trip to Washington, D.C. in 1990; (2) downgrading his award for the investigation of a serious crime in 1992; (3) receiving radar training instead of a narcotics assignment in 1992; (4) investigating him in February 1993 as a result of the Flower Hill Hose Company meeting; and (5) failing to give him overtime for testifying at a Human Rights hearing for another officer in 1993. Accordingly, on these grounds alone, the jury's verdict must be set aside.

In granting the defendants' motion for a new trial, the Court recognizes that it might be possible to save the verdict if the verdict sheet clearly set forth what damages were awarded for what specified unlawful acts. However, in this case, the verdict sheet was designed to aggregate both the unlawful conduct and the damages award. There is no way to determine what speech of "public concern" the jury found to have caused the damages awarded. Accordingly, it is not possible for the Court to sever the erroneous portion of the verdict, namely the damages awarded for activity which occurred prior to November 1993, from the valid parts. As a result, there must be a new trial.

In concluding the analysis of this issue, the Court recognizes that the defendants' motion raises a number of other significant issues. For the sake of a complete record, the Court will address these remaining arguments in turn.

b. *The plaintiff's speech at the Commissioner's November 1993 meeting and his report to the District Attorney*

The defendants further contend that the plaintiff's speech regarding alleged unlawful activity on the part of Commissioner Zaccherio cannot support a claim under the First Amendment. In this regard the Police District makes three arguments.

Initially, the defendants contend that "even if Mr. Gros' speech in these two instance[s] touched matters of public concern, his motiv[ation] for speaking out was private and personal." Def. Mem. of Law at 7. As stated above, in assessing this argument, the Court is obligated to consider the facts in the light most favorable to the plaintiff. *Vasbinder,* 926 F.2d at 1339. Deference must be given with respect to all issues of credibility resolved by the jury and all reasonable inferences must be made in support of the jury's verdict. *Id.* Applying this standard, the Court rejects the Police District's argument. In considering the parties' evidence, the jury could have found that the plaintiff was motivated to speak out of concern for the public at the November 1993 Commissioner's meeting with regard to Commissioner Zaccherio's alleged unlawful activity, and the standard set forth above mandates deference to that view.

Further, the Police District contends that the post November 1993 alleged acts of harassment, namely not receiving overtime for testifying at a PERB hearing, being asked to see a police surgeon, and having charges brought against him for failing to follow the chain of command, do not rise to the level of a constitutional violation. Again the Court disagrees. These acts, combined with the fact the defendants did not promote Gros until 1994, could rise to the level of a violation of the plaintiff's First Amendment rights. *See, e.g., Lambert v. Richard,* 59 F.3d 134, 137 (9th Cir.), *cert. denied sub*

*nom., City of Santa Ana v. Lambert,* —— U.S. ——, 116 S.Ct. 673, 133 L.Ed.2d 523 (1995) (letter of reprimand is sufficient retaliation to maintain First Amendment claim); *Broderick,* 751 F.Supp. at 292–93 (upholding First Amendment claim where alleged retaliation against a police officer consisted of disciplinary hearings, failure to promote, and refusal to permit plaintiff to practice law in his spare time).

The Police District's final argument in this regard is that the "plaintiff has not met his burden of showing that the 'protected speech' was a 'substantial' or 'motivating' factor in the action taken." Def. Mem. of Law at 8. Again the Court believes that this argument turns on questions of intent. Taking the evidence in the light most favorable to the non-movant, the Court finds that the jury could have credited the plaintiff's testimony that the Commissioners disapproved of his union activity, which included speaking on matters of public concern such as Commissioner Zaccherio's alleged unlawful conduct, and as a result harassed him in the manner set forth above. *See Vasbinder,* 926 F.2d at 1340; *Broderick v. Roache,* 996 F.2d 1294, 1298–99 (1st Cir.1993) (whether charges brought by police department against plaintiff-police officer constituted retaliation for exercise of First Amendment rights involved question of intent to be resolved by the trier of fact). Giving the required deference to this jury finding, the Court finds that Gros established that a motivation for the retaliation against him was his exercise of his First Amendment rights, and the verdict cannot be disturbed on these grounds.

### 2. Statute of limitations grounds

■ The Police District's second argument is that the plaintiff's "promotion claim is barred by the three year statute of limitations applicable to § 1983 actions." Def. Mem. of Law at 8; *see Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Day v. Morgenthau,* 909 F.2d 75, 78 (2d Cir.1990), *cert. denied sub nom., Day v. Moscow,* 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992). Resolution of this issue turns on whether the Court finds that there was a "continuing violation" of the plaintiff's constitutional rights. *See Cornwell v. Robin-*

*son,* 23 F.3d 694, 703–04 (2d Cir.1994); *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333–34 (2d Cir.1992). Under this doctrine, where a plaintiff is subject to a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the "last discriminatory act" occurs. *Cornwell,* 23 F.3d at 703.

The Court however, need not reach a determination as to whether there was a continuing violation in this case. As set forth above, the plaintiff failed to offer any evidence of a violation of his constitutional free speech rights prior to November 1993 when he spoke out at the public commissioners' meeting accusing Commissioner Zaccherio of criminal conduct. This lawsuit was commenced on January 12, 1995, less than three years later. To the extent that the statute of limitations might have barred the introduction of evidence of earlier alleged unlawful activity, the Court has already determined it was in error when it charged the jury that it could have found a constitutional violation based on this conduct. Accordingly, the Police District's statute of limitations argument is moot.

### 3. Qualified immunity

The individual defendants further move for judgment as a matter of law on the ground of qualified immunity. The Second Circuit recently discussed the subject of qualified immunity in a section 1983 case in *Weaver v. Brenner,* 40 F.3d 527 (2d Cir.1994). Judge Cardamone set forth the rule as follows:

The goal of § 1983 is to deter public officials from violating citizens' federal rights and to compensate victims of such official wrongdoing. The doctrine of qualified immunity weighs this important interest in citizens' civil rights against the policies of encouraging qualified persons to accept public positions and ensuring that public officials vigorously discharge their duties. The balance struck under the doctrine of qualified immunity has been formulated as a rule: public officials are immune from § 1983 civil rights suits brought by an aggrieved citizen when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

It is not necessary that the questioned action have been previously held unlawful for the official to be held liable; rather, it is enough if the unlawfulness is apparent in light of pre-existing law. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)... Further, even when the right in question was clearly established at the time of the alleged unlawful conduct, an official is still entitled to immunity were it objectively reasonable for him to believe the conduct lawful. *See O'Neill v. Babylon*, 986 F.2d 646, 649 (2d Cir.1993).

*Id.* at 532–33.

■■■■ Unresolved factual questions bearing on qualified immunity should be decided by the jury on special interrogatories. *See Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.), *cert. denied*, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). But "[t]he ultimate legal determination whether, on the facts found, a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide." *Id.; see also King v. Macri* 993 F.2d 294, 299 (2d Cir.1993) (stating that it is "entirely proper" for the district court to submit disputed factual questions to the jury and reserve for itself the ultimate legal question of the availability of the qualified immunity defense). Judge Winter, dissenting on other grounds in *Warren*, 906 F.2d at 77, explained:

[i]t is in essence a legal decision whether, on the basis of the law as it existed at the time of the particular incident, the lawfulness of the officer's conduct was reasonably clear or was a matter of doubt. Juries are hardly suited to make decisions that require an analysis of legal concepts and an understanding of the inevitable variability in the application of highly generalized legal principles. Moreover, such an analysis would seem to invite each jury to speculate on the predictability of its own verdict.

*Id.* (quoted with approval in *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir.1990)).

Applying these standards, the Court now finds that the individual defendants, Commissioners Zaccherio and Scobbo were entitled to qualified immunity with respect to the alleged acts of retaliation that occurred prior to November 1993 but not afterwards. The only evidence of harassment prior to November 1993, when Gros spoke out at the public commissioner's meeting, was based on the plaintiff's union activity. As set forth above, an employee speaking out on personal matters of employment, such as his own failure to be promoted, does not speak on matters of public concern which are entitled to protection under the First Amendment. *See, e.g., McEvoy*, 882 F.2d at 466–67 (holding that police officer's speech regarding the department's failure to promote him addresses a matter of private, not public, concern). Accordingly, the Court finds that Commissioners Zaccherio and Scobbo were not violating a clearly established constitutional right between 1989 and November 1993 when the plaintiff was denied overtime for his trip to Washington D.C., when his award was downgraded after solving a serious bank crime, when he was given radar training instead of a narcotics assignment, or when he was subject to investigation after the Flower Hill Hose Company meeting.

■■■ However, Commissioners Zaccherio and Scobbo, are not insulated against liability with respect to the events occurring after the November 3, 1993 public meeting. As stated above, in November 1993, the plaintiff spoke out at a public meeting of the Commissioners alleging that Commissioner Zaccherio may be involved in criminal activity, a clearly protected constitutional right. *See Vasbinder*, 926 F.2d at 1340 (recognizing that reporting criminal activity is a matter of serious public concern). Gros also raised these concerns with the Nassau County District Attorney's office. The jury then found that the plaintiff was harassed in violation of his constitutional rights when an investigation was initiated against him for not following the proper chain of command by first reporting the alleged criminal conduct to his supervising officer.

The individual defendants contend that they are entitled to qualified immunity with respect to the alleged subsequent harassment because they acted in an objectively reasonable manner under the circumstances. In support of their position, Commissioners Zaccherio and Scobbo argue efficiency and discipline are extremely important in the law enforcement context. As a result, the chain of command must be maintained. Consistent with this principle, the charges which were subsequently brought against Gros were "not ... because of what he said[, but] because he disregarded the District's Rules and Regulations regarding reporting up the chain of command" when he raised the issue of Commissioner Zaccherio's unlawful conduct for the first time at a public meeting and with the District Attorney's office without following the chain of command. Def. Mem. of Law at 14. The Court disagrees.

. The Court finds the First Circuit's opinion in *Broderick v. Roache,* 996 F.2d 1294 (1st Cir.1993), a case whose district court opinions have been repeatedly cited to this Court by the defendants, to be particularly instructive. As stated above, in *Broderick,* the plaintiff, a police officer active in union affairs, commenced an action against the police department alleging that unlawful retaliation was taken against him as the result of his exercising his First Amendment rights. The defendants maintained that charges were brought against the plaintiff for violating the department's rules and regulations. *Id.* at 1295–96.

One of the individual defendants involved in bringing the charges argued that independent of intent, he was entitled to qualified immunity because he acted in an objectively reasonable fashion under the circumstances. The First Circuit rejected this argument:

> Simply put, the objective reasonableness of [the defendant's] actions absent any consideration of his intent is irrelevant. If [the plaintiff] can show that an intent to retaliate against him for engaging in protected conduct was a "substantial" or "motivating" factor in [the defendant's] decision to act as he did, he has met his burden as articulated in *Mt. Healthy....* Of course, [the defendant] may still prevail

in the face of such a showing if he can prove, by a preponderance of the evidence, that he would have taken the actions he did even if [the plaintiff] had not engaged in protected conduct. *Id.* Such argument, however, is for the factfinder and has bearing on the qualified immunity analysis.

*Id.* at 1298–99.

Consistent with the First Circuit's opinion in *Broderick,* the Court finds that the individual defendants are not entitled to qualified immunity with respect to the events occurring after the plaintiff raised matters of public concern at the public commissioners' meeting in November 1993 and with the District Attorney's office. The jury could have determined that the defendants' subsequent acts of harassment were in retaliation for the plaintiff's clearly constitutionally protected activity, namely raising issues of corruption in the top echelon of the Police District. Accordingly, the Court finds that the individual defendants are not entitled to qualified immunity for retaliatory acts that the jury found to have occurred after November 1993.

### 4. *Emotional distress*

 The defendants next challenge as excessive the award of damages in the amount of $500,000 for emotional distress. While a jury award is entitled to "due deference," such an award will be set aside where the "damages awarded are so excessive as to shock the judicial conscience." *Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1058 (2d Cir.1990); *Ismail,* 899 F.2d at 186; *Martell v. Boardwalk Enters., Inc.,* 748 F.2d 740, 750 (2d Cir.1984); *United States ex rel. Larkins v. Oswald,* 510 F.2d 583, 589 (2d Cir.1975).

 Reviewing the evidence set forth at the trial, the Court finds that the jury verdict awarding the plaintiff the sum of $500,000 for emotional distress shocks the conscience of this Court and could not be allowed to stand. As the defendants properly argue, the plaintiff suffered no physical injury. In his own words, he is one the "most decorated police officer[s] in the history of the Port Washington Police Department ... [with] 17 commendations, medals and awards for outstanding service, for various narcotics arrests, gun cases, homicide, murder cases, burglaries,

payroll robberies, bank robberies.... [In addition] he has "approximately 11 or 12 letters of recognition and appreciation from the Nassau County executive [and] recognitions and commendations from state senators[, . . .] the FBI [and the DEA.] Tr. 64–65.

He claims that his emotional distress was the result of the defendants' harassment because of his union activities including the fact that he was not promoted to the rank of sergeant until June 1994. The harassment consisted of failure to be paid overtime, failure to receive a desired assignment, the downgrading of an award and internal charges being raised against him. Further, while Gros did receive therapy to treat his emotional distress, this therapy lasted for approximately nine months and did not continue thereafter. As a matter of fact the Court charged the jury that they could *not* award damages for future emotional distress, there being no proof of permanency. Simply stated, while the Court has already acknowledged that these events, when taken together, may rise to the level of a constitutional violation, they will not support a jury award of $500,000 for emotional distress, and even if a new trial were not necessary, that award would have to be reduced.

### 5. *Punitive damages*

The defendants also attack the award of punitive damages against Commissioners Zaccherio and Scobbo on alternative grounds. Initially, the Police District argues that the Court was in error to instruct the jury that an award of punitive damages could be rendered based on the evidence adduced at trial. Further, even if an award of punitive damages was appropriate, the defendants contend that the amount awarded by the jury, namely $80,000 against each of the individual defendants, should be either set aside or reduced.

At the outset, the Court recognizes that punitive damages are appropriate where the defendants acted in "callous disregard" for the plaintiff's free speech rights with intent to deter similarly protected activity. *Vasbinder*, 926 F.2d at 1343. Applying this standard, the Court finds that the jury could have properly awarded Gros punitive damages. The evidence put forth at the trial could have reasonably led the jury to conclude that individual defendants were responsible for intentionally delaying his promotion and initiating unfounded disciplinary charges against him in response to his exercise of his First Amendment rights. The jury could have found the required callous disregard for those rights given the testimony that Gros was confronted with the charges on Christmas Eve at his home, in front of his family, and that the charges were subsequently dropped. Accordingly, an award of punitive damages is appropriate.

As with damages for emotional distress, a punitive damages award will be set aside or reduced only if the award shocks the judicial conscience and constitutes a denial of justice. *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir.1992). In making such a determination, the Court must be mindful that the purpose of such an award is to deter similar conduct in the future, not to create a windfall for the plaintiff. *Id.*

However, the Court declines to address the amount of the punitive damages award at this time. The Court has already determined that a new trial is necessary, and an analysis of this issue at this juncture will not materially advance these proceedings.

### 6. *Back pay*

As part of their statute of limitations argument, which the Court declined to address, the defendants attack the award of back pay as not supported by the evidence. However, rather than discuss these calculations at this time, the Court simply recognizes that because a new trial will be necessary, evidence as to back pay will be reconsidered consistent with this opinion and order at the new trial.

### 7. *Jury trial rights*

Finally, the defendants attack the verdict on the grounds that were denied a jury of their peers in violation of their Seventh Amendment rights. *See Henry v. State Farm Ins. Co.*, 788 F.Supp. 241, 244 (E.D.Pa. 1992). The defendants maintain that a disproportionate number of jurors considered, as well as those ultimately empaneled were from New York City as opposed to Nassau

and Suffolk Counties, and therefore, were from a different community than the one involved in this case.

 Without belaboring the issue, the Court rejects the defendants' argument. The Eastern District of New York is comprised of five counties and jurors are selected from all five. The fact that there were some jurors from the counties other than Nassau and Suffolk is insufficient to support a violation of the defendants' Seventh Amendment rights, as matter of law.

### 8. *Attorneys' fees*

Both parties have made motions for attorneys' fees. Gros moves for attorneys' fees based on the jury verdict previously rendered in his favor. *See* 42 U.S.C. § 1988. However, because the defendants' motion for a new trial has been granted, the plaintiff's motion for attorneys' fees must be denied. On the other hand, the defendants move for attorneys' fees associated with the trial based on the plaintiff's misrepresentations to the Court regarding speech on matters of public concern, which in turn led to the erroneous verdict. While the logic of such an argument is appreciated, the Court, in its discretion, declines to impose such a drastic sanction. Plaintiff's counsel has conducted himself conscientiously and in good faith throughout these proceedings. Accordingly, the Court finds that the purpose of deterrence underlying sanctions would not be served by such an award in this instance. Accordingly, the defendants' motion for attorneys' fees is also denied.

### III. *Conclusion*

Having reviewed the parties submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 is denied, it is further

ORDERED, that the defendants' motion for a new trial pursuant to Fed.R.Civ.P. 59 is granted, it is further

ORDERED, that both parties' motions for attorneys' fees are denied, and it is further

ORDERED, that the parties are to appear before this Court on January 6, 1997 at 9:00 a.m. to select a jury.

SO ORDERED.